H. C. WATTENBARGER v. J. W. POWERS et al.

Eastern Section.   April 7, 1928.

Petition for Certiorari denied by Supreme Court, December 8, 1928.

E. B. Madison, of Athens, for appellant.
J. W. Lillard, of Decatur, for appellee.

SNODGRASS, J. This is an injunction bill, in the nature of an ejectment proceeding. It sought to restrain the defendants from trespassing on land claimed by complainant. The bill averred that complainant was the owner of the land it sought to protect, that defendants were cutting timber thereon, felling upon the land timber from adjoining lands, and erecting and maintaining a pipe line across complainant's land and taking water from his creek, all of which it sought to enjoin. It sought damages for the trespass, for all timber cut and removed, and prayed for specific and general relief.

An injunction issued and was served, but later modified, upon the execution of a bond, so as to allow the use of the pipe line and water.

Defendants answered, admitting the cutting of timber, the erection and use of the pipe line and getting of water, but denied complainant's title to the property described in the bill, or in dispute. The defendant Powers set up title in himself to the land in dispute, claiming to have sold the timber thereon to defendant Rayl, who had a sawmill adjacent on the undisputed property of said defendant, and required the water in its operation. The other parties mentioned were connected in some minor unimportant relation either to Powers or the owners of the sawmill, and will not be noticed further.

Proof was taken and the cause submitted to the Chancellor, who sustained the bill and decreed that:

"The boundary line between the complainant and defendant in the Fourth district of Meigs county, Tennessee, be decreed to be the boundary as set out in deed from J. R. Gettys to R. H. Gettys, registered in Book A, page 331 of the register's office of Meigs county, Tennessee, which said deed is as follows in regard to lands in controversy: 'thence down said creek (Mill creek of Sewee creek), and three rods from its east bank to the mouth of the lane nearly opposite my mill dam, and thence

on westwardly with said lane or road dividing the Boggess and Gettys land, to center of the road leading from Sewee to Sweetwater, thence with said Sewee and Sweetwater road,' the beginning above mentioned being far enough up said creek to include what is known as the Rogers Mill and house, also the privileges contained in deed from Latham to McElwee.''

The defendants were perpetually enjoined from trespassing on said land of complainant, who was awarded all costs of the cause and an execution directed to issue therefor.

On complainant's motion the Master was directed to hear proof and report to the next term of the court as to the amount of damages due complainant for the trespass of the defendant on the land.

To this decree exception was taken by the defendant J. W. Powers and an appeal therefrom to this court perfected by him, and he insists that the learned Chancellor erred:

"(1) In holding and decreeing that the strip of land in dispute herein, viz., a strip about three rods wide and several hundred yards in length, on the west side of Sewee creek, running up and down the same between said creek and a roadway, or lane, as it meanders, had been adversely held and claimed by R. H. Gettys, complainant's predecessor in title, for more than seven years; because said Gettys admits of record that he did not claim said land, that it was in the woods, lying out, and unenclosed, and, in substance, that he would have at any time gladly surrendered it to the true owner, to-wit, appellant Powers or his predecessor in title.

"(2) In holding and decreeing that the enclosure of the lands lying below the mill dam, which lands were never claimed by appellant Powers, had any bearing on the question of the title, lines, or possession, of the so-called disputed strip in question; and that the enclosure of such portion of the entire large area of the original lands carries title to the entire boundary, irrespective of enclosure or otherwise.

"(3) In finding the matter in controversy in favor of the complainant, and enjoining complainant Powers from 'trespassing on said lands of complainant;' and in taxing defendants with the costs of the cause and awarding execution therefor; and in ordering a reference to ascertain the damages due complainant for the trespassing of defendant on said land.''

The third specification involves the others, and the case may be disposed of upon its consideration.

The dispute over this long, narrow strip, which one of the witnesses said involves about a quarter of an acre in area, was occasioned possibly through some desire to protect the mill pond from

any possible claim of an adjacent proprietor, or as a right-of-way thought to be essential or desirable, but which we think did not justify the extension of the boundaries of the deed made by J. R. Gettys, which he said later in his deposition was an unintentional mistake, though it was not available in this case to correct it, if such it was.

The parties in their failure to object, or to have their objections ruled upon or preserved, have been somewhat liberal in allowing the introduction of abstracts and verbal testimony as to ownership, as well as concessions; from all of which it appears that a common ancestor in estate owned all of the land in dispute at the beginning, and that said common ancestor (one A. Boggess) conveyed a portion at least of what the complainant claims to one Thomas B. McElwee, on the 9th day of March, 1849, under the following calls:

"Lying on the waters of Sewee creek, in range 2, west township first, section 2, and part of the northeast quarter of said section, beginning at the southwest corner; thence running with the east line to a conditional line between said Boggess and John Rogers; thence with said conditional line to the creek and across said creek; thence turning down said creek and running with its meandering until it strikes the north and south lines of said quarter section; thence across the creek south with said line to the beginning, and also granting to said McElwee full privileges of the creek in the use of machinery, mills, etc., as far said land may be injured thereby also."

The complainant claims under the foregoing deed through mesne conveyances, one of which, as will appear later, has enlarged the boundary.

W. A. Latham, age forty-eight years, and who testified that he had been surveying land since he was eighteen or twenty years old, surveyed the calls of the deed last above set out, and filed a plat of this survey as Exhibit No. 1 to his deposition. This plat shows the small, narrow strip in dispute from the place marked "Dam" on the plat to the place where the red line crosses the east line on the plat called the north and south line of said quarter section, and indicated on the plat as "N. 30 E. 259, Simpson line." The part in dispute is the narrow strip between these last two points, as indicated by the red line and the two black lines just north indicated on the plat as "Lane."

Defendant Powers claims likewise through the said A. Boggess, but the deed to McElwee was the first separate portion carved from the original possession. It is therefore apparent that the complainant (who holds under this fork of the chain), could not go

beyond the north edge of this creek a distance of three poles, or any other distance, unless, indeed, he shows a conveyance enlarging this boundary connecting with the said Boggess claim, or such actual possession upon the strip or enlarged boundary as made a title under the statute of limitation of seven or twenty years.

We can have no reason to doubt that this competent surveyor had accurately surveyed the land and platted this deed to McElwee, and that it accurately shows the dispute, about which there is no real controversy. The plat filed as made by William Duncan will also show it.

On the 19th day of September, 1860 the said McElwee, in a deed conveying a much larger territory to James Gettys, conveys this same tract gotten of Boggess by the same call, which is, "thence across the creek to a stake on the bank of the creek; thence down the creek as it meanders to where the quarter section line crosses the same." This deed, it will be observed, confines the title to the north bank of the creek, the creek being the line.

Then on February 12, 1898 J. R. Gettys conveys this tract to his son, R. H. Gettys.

It is difficult to trace any of the other lines of this deed, but the black pencil line heretofore referred to as shown on Exhibit 1 to Latham's deposition indicates the enlargement that it appears to create, by extending the area of the former deeds three poles north of said creek, having the effect to create the conflict of boundary in dispute.

R. H. Gettys had this tract subdivided and a plat thereof entered upon the records, and a certified copy of this plat from the record is filed. He seems to have had a sale of these lands, or at any rate that portion of the tract where the conflict occurs is indicated on the plat as Lot No. 10, containing 67 acres. This was bought by Hagler and Culvahouse, who obtained also lots 4 and 11 as indicated on said plat, but in their deed a right-of-way was reserved across lots 10 and 11 for mill race as same now runs, also water rights as now used by mill dam situated on Lot number 10, said reservation made for Lots number 1 in said plat.

On September 17, 1919 Hagler and Culvahouse conveyed what they obtained to Henry Wattenbarger, the complainant in this case.

We cannot agree with the Chancellor in his conclusion as to any title to this strip of land shown to be in complainant. As appears from the proof, and from concessions in reply brief of complainant, the land originally belonged to A. Boggess, who made the deed to McElwee. Nothing is shown in the record, unless the Boggess title passed to defendant, that it was ever taken out of Boggess, in whom or in whose heirs, vendees or alienees the title would still be out-

standing in this little strip, so far as complainant is concerned. Complainant shows no title to that portion of the land outside of the McElwee deed, because for such portion he does not connect his title with A. Boggess, and has not shown any possession by himself or anyone through whom he claims on this strip in dispute. It is true that Gettys has shown a long possession below the milldam, but his possession could only operate under the McElwee deed to the north bank of the creek, not three rods beyond.

When J. R. Gettys extended the boundary under his deed to R. H. Gettys it did not have the effect of extending his possession to the strip. It is true it became a color of title, but it was the first time any color of title was created to the strip three poles north of the creek. Boggess or his vendees would not be required to bring any suit to recover the strip until an actual possession was put upon it, thus setting in motion the statute of limitation. In other words, the statute would not begin to run against Boggess or his vendees until an adverse claimant had entered with an actual possession upon the strip, which from the proof was never done.

We think the Gettys possession would have operated, constructively, to the boundaries of his deed, nothing else appearing, whether he so intended it or not, if it was intentionally maintained upon the land as a possession; but proof of all such constructive possession is arrested at the boundary lines of a superior title, notwithstanding the lines of the inferior deed may include some portion thereof. When the boundaries of the Gettys claim was extended three poles beyond so as to include this strip, in order to have taken actual possession of the strip he should have placed an actual possession thereon. The extension simply of his boundary did not have that effect, as the result of an actual possession maintained within the boundaries of the McElwee deed.

Up to the deed from Gettys to his son it does not appear that there had been any actual possession outside of the boundaries of the McElwee deed and, therefore, no conflict with the adjacent Boggess land out of which the tract described in the McElwee deed had been carved. The deed from Gettys to his son simply extended and consolidated the McElwee tract with this small strip, and there appears to have been no warrant for its execution.

This is not the case of Bon Air Coal Co. v. Parks, where a naked trespasser acquired a possessory right on the lands of another, and then obtained an entry around this naked possession but covering a larger area of that other's land, and, holding under the entry for seven years thereafter, acquired a possessory right to the boundaries of the entry, but it is a case of where an adjacent land owner made his son a deed to a small strip outside of his own lands that he was at the time lawfully possessing and conveying, belonging to his

590

neighbor, in whom the constructive possession existed at the time, and would continue to exist until it was ousted by an actual possession.

The case at bar falls more directly within the provisions of Elliott v. Cumberland Coal & Coke Co., 109 Tenn., 745, 71 S. W., 749, and authorities there cited.

As indicated this action is in the nature of an ejectment, where complainant is required to show title in himself and cannot depend upon the weakness of his adversary, who may rely upon the potency of even an outstanding title. Neither a twenty years nor a seven years actual possession in complainant or his predecessors in title having been shown to the strip in dispute, complainant fails in his action and is not entitled to any recovery.

The decree of the Chancellor is therefore reversed and the bill dismissed at the cost of complainant, for which a judgment and execution is awarded against him and his securities on the prosecution bond.

If desired, a remand of the case may be had for a reference to ascertain the damages if any that may have accrued to the defendant by reason of the wrongful suing out of the injunction.

Portrum and Thompson, JJ., concur.

### ON PETITION TO REHEAR.

In this cause we have examined the petition to rehear, and still adhere to the convictions announced in our former opinion.

The petition is therefore dismissed, with costs against petitioner and his security.