CUSICK et al. v. CUTSHAW et al.—237 S. W. (2d) 563.

Eastern Section.   September 17, 1948.

Petition for Certiorari denied by Supreme Court, January 25, 1949.

284

E. E. Creswell, and R. L. Ogle, both of Sevierville, and K. E. Steinmetz, of Knoxville, for appellants.

O. M. Connatser, of Sevierville, for appellees.

GOODMAN, J.  This is a controversy over the boundary line between the lands of Harley Cutshaw and Anna Mae Cutshaw, complainants and appellees, on the one hand, and Charlie Cusick and Aubrey Cusick, defendants and appellants, on the other.  The parties are the owners of adjoining farms in the Tenth Civil District of Sevier County, Tennessee.

Complainants, in their original bill, invoked the jurisdiction of the Chancery Court under the provisions of Sections 10368 and 10369 of the Code of Tennessee.

Having set forth the respective titles to the subject properties, they averred the correct boundary line between them to be as follows: "Beginning on a stake at the Rogers line corner to Samuel Cusick and the defendants herein, being the line of the complainants herein; thence S. 53 W. 125 poles to a stake." They averred that a dispute had arisen over the same and sought by said bill for the establishment of the true and correct boundary line and for an injunction restraining and prohibiting the defendants from interfering with the peaceful occupation and possession of their premises. The defendants, by their answer, in substance, admitted the ownership of respective properties by the parties, but denied that the boundary line between said properties was as asserted in the original bill. They pleaded peaceable, exclusive, uninterrupted and continuous possession of the disputed lands claimed by complainants for more than twenty years and further declared reliance upon their title papers to establish ownership of the same. By cross-bill subsequently filed, they averred that, pending said suit, the complainants had erected a fence on and along, over and through said disputed lands; that said fence was built without their knowledge and consent and upon the land which they claim under their title papers, and also by open, public, notorious and unobstructed possession for more than twenty years. They further averred that the cross-defendants had turned cattle and other stock in and upon their said lands, causing damage and injuries thereto and to the crops sowed thereupon. Application was therein made for the court to permit Mrs. Charles Cusick to become a party cross-complainant, representing herself in her own right and also as next friend of her husband, Charles Cusick, by reason of the physical and mental condition of the latter. An in-

junction was sought prohibiting and restraining the cross-defendants from erecting any fence across the disputed lands, and from exercising any further occupation or possession thereof, pending determination of the cause by the court; and an order of reference to ascertain damages sustained as a result of the alleged wrongful acts of cross-defendants prayed. The injunctions sought by the original bill and by the cross-bill were both issued and served.

By answer to the cross-bill, the cross-defendants, in substance, admitted that they had constructed a fence across said premises in accordance with the boundary line insisted upon by them as correct, pending the outcome of the suit. They denied that they had trespassed upon the land of cross-complainants, averring that the latter were in willful violation of the injunction issued pursuant to the original bill. They also challenged the right of the petitioner, Mrs. Charles Cusick, to be permitted to appear as next friend on behalf of her alleged husband. By amendment to their answer to the original bill, the defendants, reiterating their plea of the twenty year statute, specifically pleaded Sections 8582-8583 and 8584 of the Code of Tennessee as a bar to complainants' action, declaring that they had held the land in controversy in adverse and peaceful possession and under a color of title for more than seven years. By amendment to the cross-bill, cross-complainants declared that cross-defendants had allowed a large number of chickens upon their said lands in cultivation, which had destroyed or would destroy their said crops unless they were restrained by order of the court. An injunction was issued and served pursuant to the prayer therefor contained in the amended cross-bill. A demurrer interposed by the cross-defendants to such amendment, predicated princi-

pally upon multifariousness, was sustained by the court and the amendment dismissed. Other motions and orders relative to the pleadings are not herein specifically recited because immaterial to a determination of the case, and no question with respect thereto having been raised upon appeal.

Upon the hearing, the Chancellor found and decreed that said disputed boundary line ". . . begins on an iron, pipe, a corner to Cusick and Pitner in the old Rogers line, as designated in the Sam Cusick deed filed and exhibited in the record, the same being at a point South 31 degrees and 30 minutes east 940.5 feet from a stake, a corner to the Sam Cusick property; thence running from said iron pipe-stake in the old Rogers line, South 53 degrees west 1646 feet to an iron stake in the old Rogers line at the orchard fence near the Sam Cusick residence; thence running with the said orchard fence, South 4 degrees and 15 minutes east 200 feet to an iron stake; thence north 66 west 115 feet to an iron stake, said stake being 13 feet south of said orchard fence and 6 feet from a plum tree; thence south 67 west 164 feet to an iron stake in old road, the said stake being South 8 west 36 feet from a three-quarter inch pipe planted at old roadway, the same being the beginning corner of the Sam Cusick property, as shown by the testimony and the map, Exhibit 4 to the testimony of Hubert Tarwater, surveyor, and made and filed in connection with H. L. Sienknecht, surveyor, the same being 2136 feet from said stake at the old Rogers line, corner to Sam Cusick property. The said three-quarter-inch pipe being at a point of the beginning of the Sam Cusick property and the Sam Taylor property, and across the old road 22 feet from a sassafras tree." The court further decreed ". . . that the true and correct boundary or prop-

erty line at issue between the parties in this cause, be and the same is hereby fixed and established in accordance with the aforesaid metes and bounds, and that each of the parties, their representatives, heirs, and assigns may have, use and possess, their respective adjacent lands in question in accordance with the provisions of this decree, and without any interference by either.''

Appellants' seven assignments of error, in general, challenge the methods employed by the Chancellor in determining the division line between the properties and the resulting boundary, the sufficiency of the evidence upon which such determination was predicated and the action of the Chancellor in failing to hold that adverse possession by them of the lands in controversy operated as a bar to any recovery by the complainants. The title papers of the complainants exhibited in evidence describe their property by boundary only, whereas the deeds by which the defendants and their predecessor acquired title describe their premises more particularly by courses and distances. It is the call contained in the deed from A. B. Delozier and wife, Laura Delozier, to Sam Cusick, father and immediate predecessor in title to the defendants, Aubrey Cusick and Charlie Cusick, dated September 14, 1906, to-wit: "S 53 W 125 poles" which complainants insist represents the true and correct boundary call between their property and that of the defendants.

The principal questions before us are whether the complainants may establish the boundary line in dispute upon the deeds of all parties, or are limited to their own, whether the surveys relied upon by them and adopted by the Chancellor are correct, and whether lands other than those conveyed to defendants and their predecessor

in title have been acquired by them through adverse possession.

Complainants introduced as their witness N. H. Trentham, a surveyor, who had recently made a survey of the boundary line in question from the calls in the deed from Delozier to Cusick. He testified that he began on a hickory stump, represented to him to be the hickory in the old line mentioned in the deeds, and proceeded from there. He did not run the entire boundary, but only through the call which complainants contend is the division line. H. F. Tarwater, County Surveyor, who was also introduced on behalf of the complainants, compiled and filed in evidence a map predicated upon the title papers aforementioned, and identified the hickory corner as having been pointed out to him by Samuel Cusick at the time he prepared the deeds from the latter to the Cusick sons, the defendants, Aubrey Cusick and Charlie Cusick. The map was made from the records and not from a survey by him. He found nothing wrong with the Trentham survey upon comparison. The defendants introduced J. Walter White, a surveyor, who testified to a line and filed a map, different from that as established by Trentham's survey, stating that he began his survey at some pointers which had been located for him, including a hickory approximately six inches in diameter. He testified, ''I begun at a place that had some pointers marked all around it presumably. I was informed it was a Cusick corner in the Cusick tract, and there was also a hickory that was called for in the same deed they produced for me to do this by.'' The surveyor Trentham was subsequently recalled by the defendants and testified to a survey made in their behalf to plot and delineate their possessions, and filed a map thereof.

It appears that some twenty-five to thirty years prior to the institution of this suit a dispute arose between the predecessors in title to the respective parties, at which time several surveys were made. There is proof that the line then followed generally corresponded with the White survey relied upon by the appellants and that the owners of the adjoining properties at that time settled their differences and lived harmoniously as neighbors thereafter. However, the evidence as to the agreement arrived at between them is considered too tenuous when viewed with contemporary facts respecting possessory rights exercised to be determinative of the present issues. During the hearing, the Chancellor appointed Tarwater and White to make another survey. White did not serve and one H. L. Sienknecht, a surveyor, was substituted. A map prepared by Sienknecht was filed in evidence although the latter did not testify. Tarwater testified that the map correctly reflected the survey. They were directed in the order of the Chancellor, to ''. . . begin on a known corner, as shown on a plot of the 'Cusick Tract,' the defendants' said lands, filed as Exhibit '5' to the deposition of Hubert Tarwater, in this cause, which corner begins with the call N 80 E 8 at a Hickory in old line, and proceed to establish said boundary line between the said parties designating the metes and bounds thereof by permanent markers, steel or iron rods, or the like, particularly the corners.'' The Chancellor, in his decree as aforesaid, adopted the final survey except that he modified the same so as to turn from the call of South 53 degrees West at a point 1646 feet from the corner to Cusick and Pitner in the old Rogers line, proceeding with the orchard fence near the Sam Cusick residence and running South 4 degrees 15 minutes East 200 feet to an iron

stake; thence North 66 West 100 feet to an iron stake, such stake being 13 feet South of said orchard fence and 6 feet from a plum tree; thence South 67 West 164 feet to an iron stake in old road, thus granting to the defendants a portion of their claimed possessory rights in the disputed property.

■ We find the survey, as adopted by the Chancellor and as stated in the final decree, to be supported by a preponderance of the evidence. The modification permitted by the Chancellor was, if anything, liberal to the defendants.

■ Appellants insist that this is a suit in the nature of an ejectment and that appellees must recover on the strength of their own title and not the weakness of their adversary, citing Wattenbarger v. Powers, 10 Tenn. App. 584. That was an action in the nature of ejectment. However, we are of the opinion that the case here presented is within the purview of Sections 10368 and 10369 of the Code of Tennessee, which provide: "Chancery jurisdiction of disputed boundary lines between lands.—The chancery court has jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one, or the only question at issue in the case. (1915, ch. 122, sec. 1, Modified.)", and "Deraignment of title is not required; title proved by competent testimony.—In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in complainant, that he prove clearly that he is the true owner of the lands described in his bill. (Ib., sec. 2, Modified.)"

■ In our opinion, the proof fails to establish adverse possession in the appellants of any portion of the

property in controversy, adequate to support assurance of title, in legal contemplation, by twenty years adverse possession or to vest title by virtue of the provisions of the seven year statute, Code Sec. 8582, with the possible exception of the orchard land, all or a major part of which the Chancellor included in appellants' boundary. Although there is evidence of the exercise from time to time by the latter of possessory rights over portions of the land in dispute, even to the extent of erecting fences along or through the disputed area and of tending crops thereon, it does not clearly appear that such possession over any specific portion was "actual, visible, continuous, notorious, exclusive and adverse". Coal & Iron Co. v. Coppinger, 95 Tenn. 526, 32 S. W. 465, 466; Mathis et al. v. Campbell et al., 22 Tenn. App. 40, 117 S. W. (2d) 764. It has been said that the sort of possession necessary to satisfy the demand for actual possession is difficult to limit and define. Fuller v. Jackson, Tenn. Ch. App. 62 S. W. 274. Fencing is considered ". . . very decisive in determining possession and claim of ownership. 1 Am. & Eng. Enc. Law (2d Ed.) 829, and cases cited", Cowan v. Hatcher, Tenn. Ch. App., 59 S. W. 689, 691, but the enclosure must be substantial, Allen v. Suseng, 41 Tenn. 204. The fencing shown to have existed on the lands in question here appears to have been unsubstantial if not actually unconsequential. Occasional use of land through cultivation, cutting grass or timber or the grazing of stock is not sufficient to establish adverse possession. Coal & Iron Co. v. Coppinger, supra; Hicks v. Tredericks, 77 Tenn. 491; Pullen v. Hopkins, Clark & Co., 69 Tenn. 741. In the case at bar the elements essential to establish title in appellants to land not embraced in their deeds, other than the small portion referred to, are considered lacking. The dis-

puted property appears to have been a sort of "buffer state" so to speak, continually in dispute.

Actually, there appears to be very little land involved in the controversy. As in other boundary line cases, senses of value often become beclouded by passion which overrides reason. What is more important is that neighbors live in harmony and peace. It is inconceivable that repossession of this land by either of the contesting parties would bring prosperity to one or pauperize the other. It is the province of the courts to hear and determine legal differences. It is for the parties to adjust any breach in their social relationship, by amicable means of human understanding, which will assure them future enjoyment of their lands in friendly cooperation. This we truly hope for.

In consideration of all of the proof, we are of the opinion that the Chancellor arrived at a just and equitable determination of the boundary line in question. Accordingly, assignments of error are overruled and the decree of the Chancellor affirmed. The appellants and the sureties on their appeal bond will pay the costs of the appeal.

McAmis and Howard, JJ., concur.