RALPH PATTERSON and Wife, RUBY TWILLA PATTERSON, Appellees, v. T. J. MOSS TIE COMPANY, Appellant.—330 S. W. (2d) 344.

Western Section. April 28, 1959.

Certiorari Denied by Supreme Court December 11, 1959.

406

408

Ross & Ross, Savannah, for appellant.

James R. Brown, Centerville, for appellees.

BEJACH, J.  This cause involves an appeal by the T. J. Moss Tie Company from a decree of the Chancery Court of Perry County, Tennessee, sustaining a bill filed by Ralph Patterson and wife, Ruby Twilla Patterson, and fixing the boundary line between land of the appellant, T. J. Moss Tie Company, and land formerly owned by Ralph Patterson and wife, Ruby Twilla Patterson,

in accordance with the claim made by them in the bill filed in this cause. The parties will be referred to as complainants and defendants, appellant and appellees, or called by their respective names.

The bill in this cause was filed August 22, 1950, by Patterson and wife under the provisions of Code Sections 10368 and 10369, now carried forward into Sections 16-606 and 16-607, T. C. A., for the purpose of locating and establishing the boundary line between a tract of land formerly owned by complainants and adjoining lands of the defendants. All of the land involved in this cause is wild land which has never been farmed. The bill describes the land formerly owned by complainants as a tract containing 303¼ acres, and as being a tract formerly owned by T. A. Twilla. It sets out the mesne conveyances from said Twilla to Charles L. Tate, the present owner, and alleges that complainants conveyed the said property to Charles L. Tate by a deed containing covenants of warranty and seisin, which deed was recorded June 29, 1937, in Deed Book No. O-15, Register's Office, Perry County, Tennessee. The bill alleges that Charles L. Tate as grantee of complainants, went into possession and control of the land conveyed to him, claiming title to same westwardly to a line recognized by the defendant, T. J. Moss Tie Company, and its resident agent, Homer Duncan, which line was the western boundary of the land conveyed by complainants and the eastern boundary of the lands owned by defendant, T. J. Moss Tie Company, having been established in 1911 by a survey made by one Butterfield who owned, at that time, the land now owned by the T. J. Moss Tie Company; and that the line established at that time was painted with red paint, and has been, until quite recently, recognized

as the true boundary line between said tracts of land. As originally filed, the bill made Homer Duncan, the resident agent of the T. J. Moss Tie Company, a party defendant; but a demurrer filed by him was sustained by the Chancellor, with no appeal taken from that ruling, which left the T. J. Moss Tie Company as the only defendant and the only appellant. While the cause was pending, complainant Ralph Patterson died; but the cause, as to him, was revived in the name of the other complainant, Ruby Twilla Patterson, as executrix of Ralph Patterson's will.

The defendant, T. J. Moss Tie Company, also filed a demurrer. The Tie Company's demurrer was overruled, with leave to rely on same in its answer. This it did in an answer filed February 12, 1951. The several grounds of this demurrer present for adjudication most of the propositions of law contended for by appellant. In addition to reiterating the defenses set out in its demurrer, the answer denies all material allegations of complainants' bill, and sets up the contention that the issues, adjudication of which are sought by complainants' bill, could only be presented for adjudication by an ejectment suit.

The proof was taken by depositions and a large number of witnesses testified for both complainants and defendant.

The land in dispute embraces a tract 100 poles wide and 110 poles long, the 100 poles running east and west, and the 110 poles running north and south. The line in dispute is the line running north and south, which line complainants contend should be established 296 poles west of the eastern boundary line of the land conveyed

to Tate, whether measured from the northeast corner or the southeast corner of the Tate property. It was conceded by complainant Ralph Patterson and by Charles L. Tate, both of whom testified as witnesses in this cause, that, although said line is 100 poles east of the point which would be reached by following the calls of Patterson's deed, Tate is entitled to no land west of that line.

Without undertaking to analyze all of the evidence, some of which is complicated and highly technical, by summarizing the testimony of each witness, it is sufficient to say that the preponderance of the evidence tends to establish, and the Chancellor found as a fact, that for about 40 years the line contended for by complainants had been established and identified by painting same with red paint, and that after defendant, T. J. Moss Tie Company, acquired its land which lies west of the land conveyed by complainants to Tate, it had had a survey made and repainted the same line, this time using green paint; but that a short time before the institution of this suit, a new line, 100 poles east of the line painted with red and green paint, had been painted with yellow or orange paint. There was testimony tending to show that Homer Duncan, resident agent of the defendant T. J. Moss Tie Company, had pointed out the northwest corner of the land conveyed by Patterson to Tate at the point contended for by complainants, although Duncan denied this. The County Surveyor, K. D. Kittrell, who had had approximately 30 years experience in that capacity, testified that he made a survey of the land bought by Tate from complainant Patterson, that his survey showed the newly painted orange line to be 100 poles east of the old red and green painted line at the west end of the tract conveyed by Patterson to Tate. He also testified that, in

connection with his activities as County Surveyor, he had observed that the T. J. Moss Tie Company marked its lines with green paint, and that it is generally understood in the county that its lands are enclosed by green painted lines. He said that in making his survey of the Tate property, he began at the northeast corner and ran westwardly according to calls, which carried him across the newly painted orange line to the old line painted in red and green 100 poles west of the newly painted orange line, and that it was 296 poles from the northeast corner of the Tate land to the old line painted with red and green paint. He filed a plat of his survey, which indicates the newly painted orange line by a red dotted line. This plat was adopted by the Chancellor as correct and made the basis for establishing the boundary line as contended for by complainants.

The Chancellor filed, on April 28, 1958, a written "Finding of facts and opinion", which has been of great assistance to us in disposing of this cause; and on October 13, 1958, a final decree was entered which sustained the bill filed in this cause, adjudged that the survey made by H. D. Kittrell, County Surveyor of Perry County, Tennessee, evidenced by the Plat filed as Exhibit 1 to his deposition on October 31, 1951, is the true and correct survey of the land in question, and contains the correct and proper calls of same; that the west boundary as surveyed by said County Surveyor, as shown by the plat, Exhibit 1 to his deposition, following the old line painted red and green, is adjudged to be the true boundary line between complainants and defendants, and the same is so established as complainant's west boundary line and defendant's east boundary line. From that decree, the defendant, T. J. Moss Tie Company, prayed and

perfected its appeal, and has filed in this Court ten assignments of error.

We deem it unnecessary to copy these assignments of error into this opinion. They are quite lengthy, somewhat involved, and to a considerable extent overlap each other. As we analyze them, however, they present for determination by this Court, three questions which are determinative of this law suit, which are as follows:

1st. Do complainants, Ralph Patterson and wife, have a right to maintain this suit;

2nd. Is this case necessarily an ejectment suit which can be maintained only by deraigning title, either from the State or from a common source, neither of which is done in this case;

3rd. Does the bill in this cause reflect a scheme on the part of complainants, Ralph Patterson and wife, to assist their grantee, Charles L. Tate, in a law suit which he has filed in the Circuit Court of Perry County against defendant, T. J. Moss Tie Company, to recover damages for cutting timber on the land, title to which is disputed in this cause; and, if so, does such scheme bar complainants' right to sue in this cause.

We will dispose of these contentions in the order named.

Defendant's first contention is that complainants are not, as a matter of law, entitled to maintain against defendant, the bill filed in this cause. Several reasons are assigned for this contention: 1st. Because complainants are not owners of nor in possession of the land involved, having conveyed same to Charles L. Tate prior to June 29, 1937; 2nd. Because the bill states no

controversy between complainants and defendant; 3rd. Because Charles L. Tate, complainants' grantee, is not made a party to this cause; 4th. Because the bill does not seek to remove a cloud on the title conveyed by complainants to Tate, and therefore can not be maintained as a bill *quia timet;* 5th. Because no allegation is made that any part of the purchase money has been withheld or remains unpaid pending confirmation of title; 6th. Because the bill does not allege that any claim has been made or will be made by complainants' vendee, Tate; 7th. Because the bill is purely speculative as to any fear of liability on complainants' covenants of warranty and seisin, and is prematurely brought; 8th. Because the bill is brought for the use and benefit of complainants' grantee, Charles L. Tate, without making him a party; 9th. Because the description of the land conveyed by complainants to Tate is so indefinite and uncertain as to render same void; 10th. Because there are irreconcilable conflicts of description in the deed conveying the land to complainants and in the deed by which complainants conveyed same to Tate, and also in the deed by which same was conveyed to complainants' grantors; 11th. Because of the conflicts in description of the land, it is contended that the Court could not properly fix a boundary line.

The bill in this cause, on its face, purports to be a bill *quia timet,* and as such, it was sustained by the learned Chancellor. We think the bill falls clearly within the language of Gibson's Suits in Chancery, (5th Ed.) Section 1089, dealing with suits *quia timet,* which is as follows:

"Bills quia timet lie where a person has reasonable fears of being subjected to future inconvenience,

probable or even possible to happen by neglect, inadvertence or culpability of another, in which case the court will quiet his apprehensions by removing the cause. The main objects of such a bill are: (1) To guard against possible or prospective injuries, and (2) to preserve the means by which existing rights may be protected from future or contingent violations.''

In addition to the language quoted above, Section 1089, Gibson's Suits in Chancery (5th Ed.) enumerates eight specific situations which justify filing of a bill *quia timet;* and, while the bill in the instant case, does not, in our opinion, qualify under any of the enumerated situations, nevertheless, we think it is covered by the general language quoted above.

The learned Chancellor was of opinion that the instant case was controlled by the decision of our Supreme Court in the case of Jones v. Nixon, 102 Tenn. 95, 50 S. W. 740; and we concur in that conclusion. That case is cited with approval in Swainson v. Scott, 111 Tenn. 140, 142, 76 S. W. 909; Stearn's Coal & Lumber Co. v. Patton, 134 Tenn. 556, 564, 184 S. W. 855; and in Brier Hill Collieries v. Pile, 4 Tenn. App. 468, 475. In Jones v. Nixon the complainant, Jones, had conveyed to different persons, some years previously, by deeds with full covenants of warranty, a tract of 1600 acres of land in Hickman County, Tennessee, and shortly before the filing of the bill in that cause, by some mistake or oversight, without pleading, process, or jurisdiction in respect thereto, the said land had been sold under decree of the Chancery Court as part of the assets of the estate of O. A. Nixon, deceased, to whom no part of it ever belonged, and the defendant,

Henry Nixon, who had become the purchaser of the entire tract of 1600 acres was about to have his purchase confirmed by the Court. The bill in that cause was filed to prevent confirmation of the sale which would have cast a cloud on the title of complainant's vendees. The defendant demurred, but the demurrer was overruled; and, on appeal, the ruling of the Chancellor was affirmed. From the opinion of the Supreme Court in that case, written by Caldwell, J., we quote, as follows:

"Judge Story says bills *quia timet* 'are in the nature of writs of prevention, to accomplish the ends of precautionary justice. They are, ordinarily, applied to prevent wrongs of anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a court of equity because he fears *(quia timet)* some future probable injury to his rights and interests, and not because an injury has already occurred which requires any compensation or other relief.' 2 Story Eq. Jur., sec. 826. It is through bills of this kind, then, that clouds are removed from title to real estate. 3 Pomeroy Eq. Jur., sec. 1398; Holland v. Challen, 110 U. S. 15, 16, 3 S. Ct. 495, [28 L. Ed. 52]; Hayward v. Dimsdale, 17 Ves., 111; Almony v. Hicks, 3 Head 39; Anderson v. Talbott, 1 Heis. [407] 408. Strictly speaking, the present bill is not brought to remove a cloud from title, but it in intended, rather, to prevent the consummation of a proceeding that would, unhindered, result in obscuring that title. The difference is not one of controlling importance, however, for the jurisdiction of courts of equity to grant the desired relief is as well established in the one case as in the other, and the principles authorizing the prevention of

clouds are, generally, the same as those applied in removing clouds.'' Jones v. Nixon, 102 Tenn. 98-99, 50 S. W. 741.

In disposing of the contention made by the defendant in the case of Jones v. Nixon, that a bill such as the one there involved could be filed only by the person who held the legal title to and was in possession of the land involved, the Supreme Court's opinion pointed out several exceptions to that general rule, and decided that the case before it fell within one of the exceptions. From the Supreme Court's opinion, on this aspect of the case, we quote as follows:

"Another exception has been made, in some of the courts, in favor of the vendor of land with warranty of title, his obligation to protect the title of his vendee being deemed sufficient interest in the subject-matter to authorize his timely interposition and warrant the aid of a court of equity. Ely v. Wilcox, 26 Wis. 91; Chamblin v. Schlichter, 12 Minn. 276, Gil. 181; Remer v. Mackay, 3 F. 86. This exception covers the present case exactly, and under it the bill should be sustained. Jones is bound, by the covenants of his deed, to defend and protect the title of his several vendees, and he ought to be allowed to do so, if he chooses, by an aggressive anticipatory action, rather than wait and make defense to the prospective suit or suits of him who is about to consummate proceedings that will cast a dangerous cloud upon that title. He is undoubtedly an interested party. In reality it may turn out that he, of all persons, is the one most concerned in the dissipation of the impending cloud, and, being so, a court of equity will not be slow to come to his

relief.'' Jones v. Nixon, 102 Tenn. 98—99, 101—102, 50 S. W. 741.

The objection raised by appellant, in the instant case, that complainants' grantee is not made a party to this suit is, also, disposed of in Jones v. Nixon adversely to that contention. We quote the first headnote to that case, which is as follows:

"A vendor who has conveyed a perfect title with full covenants of warranty and placed his vendees in possession, can maintain a bill *quia timet* to prevent and enjoin the clouding of that title by confirmation of a sale of the property to a third party, made in a chancery cause to which neither he nor his vendees, nor other person having title thereto, were parties."

In our opinion, the decision in Jones v. Nixon and the language quoted from same fit the facts of the instant case as aptly as the facts involved in that case. But, it is insisted by able counsel for the T. J. Moss Tie Company that in the instant case, there is no cloud, either existing or impending, on the title to land conveyed by complainants Patterson to Tate, and, consequently, that the instant case should not be controlled by the decision in Jones v. Nixon. We cannot agree with this contention. We think it is immaterial that, in the instant case, complainants' possible future liability under the covenant of warranty in their deed may be averted by settling in advance a boundary dispute rather than by removing or preventing a cloud on the title. Complainants' right to invoke the aid of a Court of Equity for the purpose of avoiding possible future liability under their covenant of warranty, is not dependent on the form which such future possible liability may take. Likewise, in the instant case, as in the

case of Jones v. Nixon, we think the complainants' right to obtain the relief prayed for was independent of any rights their grantee may have had, and did not require that their grantee be made a party to the suit.

With reference to the contention that the various deeds and surveys proved in the instant case are in such hopeless conflict that it was impossible for the Chancellor to properly fix a boundary line between the tracts of land here involved, we think the preponderance of the evidence was with complainants, as was held by the Chancellor. In his finding of facts and opinion, the Chancellor said that the various surveys and deeds were in hopeless conflict with each other, but notwithstanding such conflict, he reached the conclusion that the preponderance of the evidence was with complainants, and he ordered the boundary line established according to their contention. The cause is before us, under the provisions of Section 27-303, T. C. A., with a presumption of the correctness of the decree of the Chancellor, unless the preponderance of the evidence is otherwise. Certainly, we cannot say that the evidence in the instant case is contrary to the finding of fact and decree of the Chancellor. We think, as did the learned Chancellor, that in the instant case, same being one to settle a boundary line under the provisions of Sections 16-606 and 16-607, T. C. A., the complainants were entitled to establish the boundary line by reference to title papers of other parties as well as their own. Also, we think the facts of the instant case fall within the rule announced in Phoenix Mutual Insurance Co. v. Kingston Bank & Trust Co., 172 Tenn. 335, 340, 112 S. W. (2d) 381, which is, that where surveys show inaccuracies in the metes and bounds in descriptions of large bodies of land, courses and distances yield to calls for natural objects

and to calls for lines for adjacent owners. That case was not one involving a boundary dispute, as such, under the provisions of Section 16-606 and 16-607, T. C. A., but, in our opinion, the principle by which that case was settled is the same as that which is determinative in the instant case. In that case, the Kingston Bank was a judgment creditor of one Brown who had executed mortgages or deeds of trust securing the Life Insurance Company and the First National Bank of Rockwood. The land conveyed by said mortgages was a tract of land containing 929 acres located in a horseshoe bend of the Tennessee River. The Kingston Bank, a judgment creditor of Brown, undertook to levy execution on 480 acres, which it contended was not included in the descriptions used in the mortgages. In affirming the decree of the Chancery Court of Roane County, which denied the claim of the Kingston Bank, the opinion of the Supreme Court, written by Mr. Chief Justice Green, said:

"The outside boundaries of the 929 acres intended to be conveyed are correctly stated in this description by reference to adjacent owners and to the river. The courses and distances given are in some respects inaccurate. The references to deeds through which Brown obtained title to the 929 acres are incomplete, and upon this last imperfection the Kingston Bank largely relies.

"Passing over the references to former deeds, the description of the land by references to adjacent owners and to the river is sufficient to identify it—to comply with the statute of frauds and also to put creditors on notice of the land intended to be conveyed. Also, there being inaccuracies in the metes and bounds, the rule is that in any description of large

bodies of land, courses and distances yield to calls for natural objects and to calls for the lines of adjacent owners. Pritchard v. Rebori, 135 Tenn. 328, 186 S. W. 121." Phoenix Mutual Life Ins. Co. v. Kingston Bank, 172 Tenn. 340, 112 S. W. (2d) 382.

The second contention of appellant is that the instant case presents a suit in ejectment, which requires a deraignment of title from the State, or at least back to a common source, and that the bill cannot be maintained as one to settle a boundary dispute under the provisions of Sections 16-606 and 16-607, T. C. A. It is conceded that, if the bill is maintainable as one to establish a disputed boundary line, under the express provisions of Section 16-607, T. C. A., deraignment of title is unnecessary. The Chancellor held that complainants' bill was maintainable under the provisions of Sections 10368 and 10369 of the Code of 1932 (carried forward into Sections 16-606 and 16-607, T. C. A.), and, on the authority of McGregor v. Lehman, 14 Tenn. App. 300; Ray v. Crane, 18 Tenn. App. 603, 80 S. W. (2d) 113; May v. Abernathy, 23 Tenn. App. 236, 130 S. W. (2d) 135; and Cusick v. Cutshaw, 34 Tenn. App. 283, 237 S. W. (2d) 563, that deraignment of title was not necessary. We concur in this ruling of the learned Chancellor. Also, the Chancellor ruled, on the authority of Union Tanning Co. v. Lowe, 148 Tenn. 407, 255 S. W. 712, and Cusick v. Cutshaw, 34 Tenn. App. 283, 237 S. W. (2d) 563, that the purpose of a suit must be determined from the pleadings. We concur in this ruling, also, and hold that for the purpose of bringing their bill within the provisions of Sections 16-606 and 16-607, T. C. A., it was not necessary for complainants to specifically label their bill as being brought under the provisions of said Code Sections. In Union Tanning Co. v.

Lowe, 148 Tenn. 407, 255 S. W. 712, in which case the complainant sought to enjoin the cutting of timber and to recover damages for timber already cut, the bill was adjudged to be maintainable as an ejectment suit only, and same was dismissed, without prejudice, because of failure to deraign title. From the opinion of the Supreme Court in that case, written by Mr. Justice McKinney, we quote, as follows:

"One can only determine the purpose of a suit from the pleadings. Certainly no such purpose as that just indicated appears in the pleadings in this cause. The complainant said nothing about there being a boundary line controversy, did not allege that it and the defendants owned contiguous tracts of land, or indicate in any manner that the suit was instituted under the act of 1915 (now carried forward into Secs. 16-606 and 16-607, T. C. A.), and there was no prayer for the establishment of the boundary line between the two tracts of land claimed, respectively, by the parties. On the other hand, the bill, as framed, was one in ejectment, or to stay waste upon an allegation of title from the state, which is substantially the same thing.

"We do not feel disposed to extend the act of 1915 beyond its clearly expressed purpose, viz. to make the deraignment of title from the state unnecessary where the purpose of the suit is to locate and establish the boundary line between two adjoining landowners." Union Tanning Co. v. Lowe, 148 Tenn. 412, 255 S. W. 713.

Tried by the test announced in the Union Tanning Co. v. Lowe case, complainants' bill in the instant case clear-

ly qualifies as a suit to settle a boundary dispute under the provisions of Section 10368 and 10369, Code of 1932, first enacted as Sections 1 and 2, Chapter 122, Public Acts of 1915, and now carried forward into Sections 16-606 and 16-607, T. C. A., even though it does not specifically label itself as being brought under or by authority of said Code Sections. With the exception of the prayer for process and the prayer for general relief, the only prayer of the bill in the instant case is, as follows:

"That upon the hearing the complainants have decree establishing the painted lines in the bill mentioned as the true line, and that defendants are estopped from claiming any other or different line, and that by the long acquiescence in the claims of all parties, the matter of all claims be put to rest, and that the representations and claims of the defendant's servant and agent as to the location of said line be held to bind the defendant, corporation, and that the rights and interests of complainants be fixed and declared by the decree of the Court in this cause."

But, it is insisted by able counsel for appellants that in determining whether a suit can be tried as a boundary dispute, where deraignment of title is not required, or as an ejectment suit, where deraignment of title is required, the Court must look not merely to the bill, or declaration, in the case, but must consider all of the pleadings of the cause. In support of this contention, they cite the case of Stearn's Coal and Lumber Co. v. Kitchen Lumber Co., 27 Tenn. App. 468, 182 S. W. (2d) 4. In that case, it is true, suit was started by a bill indicating a boundary dispute which was to be settled under the provisions of Code

Sections 10368 and 10369 (now Sections 16-606 and 16-607, T. C. A.) ; but, defendant in that case, filed a cross bill which turned the case into an ejectment suit, whereupon complainant amended its bill and converted same into a bill for ejectment, thus making the cause one in ejectment, whether tested by complainant's bill, as amended, or by defendant's cross bill. Appellant's counsel also point out that in the cases of McGregor v. Lehman, 14 Tenn. App. 300, and Ray v. Crain, 18 Tenn. App. 603, 80 S. W. (2d) 113, and May v. Abernathy, 23 Tenn. App. 236, 130 S. W. (2d) 135, cited in the Chancellor's opinion, both sides in all of said cases did deraign title from a common source. They also point out that in Cusick v. Cutshaw, 34 Tenn. App. 283, 237 S. W. (2d) 563, which is also cited in the Chancellor's opinion, both parties to the boundary dispute there involved were in possession of their respective lands up to lines claimed and established. In that case, also, cross complainant undertook to convert the suit into one in ejectment by a cross bill based on a claim of title by adverse possession of more than 20 years. The cause was, however, disposed of as a boundary dispute case. From the opinion of the Court of Appeals, Eastern Section, in that case, we quote as follows:

"The principal questions before us are whether the complainants may establish the boundary line in dispute upon the deeds of all parties, or are limited to their own, whether the surveys relied on by them and adopted by the Chancellor are correct, and whether lands other than those conveyed to defendants and their predecessor in title have been acquired by them through adverse possession.

\* \* \* \* \* \*

426

"Appellants insist that this is a suit in the nature of an ejectment and that appellees must recover on the strength of their own title and not the weakness of their adversary, citing Wattenbarger v. Powers, 10 Tenn. App. 584. That was an action in the nature of ejectment. However, we are of the opinion that the case here presented is within the purview of Sections 10368 and 10369 of the Code of Tennessee, which provide: 'Chancery jurisdiction of disputed boundary lines between lands.—The chancery court has jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one, or the only question at issue in the case. (1915, ch. 122, sec. 1, Modified.),' and 'Deraignment of title is not required; title proved by competent testimony.—In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in complainant, that he prove clearly that he is the true owner of the lands described in his bill. (Ib., sec. 2, Modified.)' " Cusick v. Cutshaw, 34 Tenn. App. 288, 291, 237 S. W. (2d) 565.

In the instant case, it is true the defendant specifically asserted, in its answer, that this cause could be maintained as a suit in ejectment, only; and it has steadfastly adhered to that position throughout the litigation. It filed no cross bill, however; and the mere assertion of such contention cannot, in our opinion, deprive complainants of a right expressly granted by statute. Complainants had the right, in our opinion, to choose both the form in which their cause of action would be cast and

also the tribunal in which same would be tried. Defendant has no more right, in the instant case, to require that complainants file their bill as one in ejectment, or file it in the Circuit Court instead of in the Chancery Court, than it would have, if complainants had filed a replevin suit in the Chancery Court, to insist that they change it into an action of detinue or trover and file it in the Circuit Court.

The third question presented by appellant's assignments of error, as we analyze same, is that it clearly appears on the record before us that the suit resulting from the filing of complainants' bill in the instant case, is merely a scheme or device to assist Charles L. Tate in a law suit which he had previously filed against T. J. Moss Tie Company, in the Circuit Court of Perry County, to recover damages for the wrongful cutting of timber on his land, in which case, he will be unable to deraign title. Whether or not this is true, and whether or not any such scheme exists, we consider immaterial. The case of Charles L. Tate v. T. J. Moss Tie Company is not before us, at this time, and Tate is not a party to this cause of action. In this connection, counsel for appellant contend that under the provisions of Section 16-607, T. C. A., complainants should have been required to prove ownership of the land in question at the time of filing suit in this cause. Under the particular facts and circumstances of this case, we think it was sufficient to prove that they had formerly owned the land, which they had conveyed by warranty deed and for the protection against liability under which warranty they brought suit.

It results that, for the reasons hereinabove stated, we consider all of the assignments of error filed by the ap-

pellant, T. J. Moss Tie Company, in this Court, to be without merit, and all of same will be overruled.

A decree may be entered here affirming the decree of the Chancery Court of Perry County and remanding this cause to that Court for enforcement of same. All costs are adjudged against the appellant, T. J. Moss Tie Company, and its surety on the appeal bond.

Avery, P. J. (Western Section), and Carney, J., concur.