## A. B. PULLEN v. HOPKINS, CLARK & CO.

1. ADVERSE POSSESSION. *Must be actual. When.* It is generally recognized as the law in this State that *actual possession* for seven years is necessary to give the younger grantee the better title under the Act of 1819, and an actual possession is generally understood to mean an enclosure by buildings, fences, or other similar improvements. But to this there are some exceptions, as an ore bank, a sand pit, a stone quarry, etc. And cases may arise where the acts of dominion and. ownership over unimproved lands may be of such a character as to leave no doubt of the claim of ownership, although the land be susceptible of enclosure or cultivation, but in general the rule that the possession must be by enclosure, if the land be susceptible of it, is so well understood and recognized that it is better not to depart from it.

2. SAME. *Possession must be continuous.* Under the statute of limitations, the possession must be for the time *continuous* and actual, to perfect an inferior title, and ordinarily the use of timber from uninclosed land is not sufficient, as such acts are not regarded as giving notice to the public of the party's possession and claim.

----
.FROM HUMPHREYS.
----

Appeal in error from the Circuit Court of Humphreys county. J. E. RICE, J.

T. L. LANIER for Pullen.

H. M. McADOO for Hopkins, Clark & Co.

McFARLAND, J., delivered the opinion of the court.

This is an action of ejectment. The plaintiffs be-
low recovered, and the defendant's motion for a new
trial being overruled, he has appealed in error. It
is conceded that the grant under which the plaintiffs
below claimed was the older and better title, but the
defendant insisted that he had held possession under
his title papers for seven years before the action
brought, and that he had thus acquired the superior
title, and this was the question upon which the case
depended. It is very properly conceded by the coun-
sel for the plaintiff in error that some of the errors
pointed out in the charge of the Judge below are, in
one event, merely abstract errors, and not important,
the whole case turning upon the question as to the
character of his possession.

The defendant was examined as a witness in his
own behalf, and his testimony is substantially as fol-
lows: That he and his brother purchased the land in
1851, it had no building, enclosures, or improvements
upon it, but he took possession and held it for more
than seven years by cutting and using timber off of
it, which he did openly, publicly, and continuously
during that period, and by paying the taxes. The
land in dispute he describes as poor, hilly, broken,
rocky, ridge land, the part in dispute being some four

hundred acres; it is situated about three-fourths of a mile from another tract, upon which he, the defendant, resided, and upon which he had and was making other improvements, and in making these improvements he obtained part of the timber from the land in dispute, such as house logs, rafters, boards, etc. He says "the land is not susceptible of permanent, profitable cultivation." Again he uses this language, "The land is so situated as to admit of no permanent useful improvements, except the taking of timber." There were two deep hollows running through the land, one of which was about twenty yards wide, and could be cultivated, but not more than six or eight acres of it. This was so cut up by a branch that run through it that not more than two acres of the land could be found at one place that could be cultivated. That in paying taxes upon the land he simply included it in the valuation of his other lands. That he contracted to sell one Baker some land for a farm, which run over on the disputed land, and Baker, about January or February, 1870, cleared and fenced some two or three acres of the disputed land. This was less than two years before the present action was commenced. The land cleared by Baker was tolerably good branch land, some other portions of the land is tolerably good rocky land, but too steep for cultivation, while other portions were level enough, but too poor to be worth cultivating. He was cross-examined at length as to the quantity of timber used. His testimony need not, however, be given here in detail, except he says that he got tim-

ber off the land every year for eight or ten years. He could not tell or approximate the number of days he was on the land getting timber, but supposes that he had gone on the land some years as much as ten or twelve days getting timber, and other years not more than two or three days. He had other timbered land more convenient, which, however, had been more culled.

There is no material conflict as to the acts of possession claimed to have been exercised, and no great deal of conflict as to the character and description of the land, and the question is, assuming that the facts above set forth had been found as a special verdict by a jury, then would these facts make out the defendant's title, or his defense to the plaintiff's action, was his possession in connection with his deed such as to perfect his title under the statute of limitations?

It is generally recognized as the law in this State that *actual possession* for seven years is necessary to give the younger grantee the better title under our act of 1819, and actual possession is generally understood to mean an enclosure by buildings, fences, or other similar improvements. This goes upon the theory that the possession must be *continuous*, and open, and notorious; that is, by such acts of possession as give notice to the public that the party is holding possession under a claim of title, and in general nothing short of actual enclosure will be regarded as sufficient evidence of the continuous occupation of the land as to give notice to the public of the adverse holding. See the subject discussed in Angell on Lim., sec. 396.

Some exceptions have been made to this rule, and the extent to which these exceptions have gone, or ought to go, is the question now presented.

In *West* v. *Lanier*, 9 Hum., 762, it appeared that the land was only valuable for the timber and iron ore upon it, and Lanier placed slaves upon the land who cut timber and removed iron ore thereform from time to time to supply a factory near by, but did not reside upon the land, build houses for the slaves, or make any enclosures; his possession, however, was held equivalent to actual possession. The court adopted the language used in *Ewing* v. *Burnett*, 11 Peters, as follows: "An entry by one man upon the land of another is an ouster of the legal possession arising from the title or not, according to the intention with which it is done. If made under claim or color of right, it is an ouster; otherwise, it is a mere trespass. In legal language, the intention guides the entry and fixes its character." Again, "neither actual cultivation or residence is necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership such as he would exercise over property he claimed in his own right, and would not claim over property he did not claim." In that case the possession consisted of digging and removing sand from a lot in Cincinnati, and it was held sufficient, the lot not being susceptible of any useful permanent improvement.

The court also uses approvingly the language of

Judge Gaston in *Williams* v. *Buchanan*, 1 Ire., L. R., 540: "Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, and not of an occasional trespasser." The possession in that case was of a fish trap and dam in a sluice of an unnavigable stream, and having been continuous, was held sufficient. Judge Green concludes, "From these cases it will be seen that an inclosure or residence on land is not necessary in order to constitute possession, but that such use and occupation of it as from its nature and character it is susceptible under a claim of ownership, will be an actual possession."

In the case of *Cass* v. *Richardson*, 2 Col., 28, it was held that the erection and use of a wash place to wash iron ore was not sufficient, the court saying that in general a building or inclosure of some sort is necessary, but that exceptions existed where the land is unfitted for residence or cultivation, as, for example, an ore bank, a coal ravine, a sand pit, a stone quarry, or a meadow below tide water.

The case of *Copeland* v. *Murphey*, 2 Col., 64, seems to carry the principle still farther, as in that case, although it was said that the timber constituted the principal source of value of the land, it did not appear that it was not susceptible of cultivation. However, in that case, although the continued cutting and using of the timber in the sight and hearing of the

plaintiff was a strong consideration, yet it further appeared that the defendant claimed the land under a lost deed, and had the line surveyed and run out when the plaintiff was along, and it was apparent that the latter was fully informed that the land was being claimed and held by the defendant as part of his home tract of land upon which he lived.

Cases may arise where the acts of dominion and ownership over unimproved lands may be of such a character as to leave no doubt of the party's claim of ownership, although the land be susceptible of inclosure or cultivation, and in such case the claim of possession, it would seem, ought to be recognized. But in general, the rule that the possession must be by inclosure, if the land be susceptible of it, is so well understood and recognized that it is better not to depart from it. Whatever may have been the rule as to an ouster of the possession which attaches to the legal title, such as would have authorized eject-ment by the true owner, yet it is generally conceded that under our statute of limitations the possession must be at the time continuous and actual to perfect an inferior title, and ordinarily the use of timber from uninclosed land is not sufficient, as such acts are not regarded as giving notice to the public of the party's possession and claim.

The exception, as stated, is, where the other acts of possession have been such as the land is suscepti-ble of from its nature and character. The ore bank, the sand bank, the fish trap, the stone quarry and coal ravine, have been instanced. Will it do to es-

tablish the rule that the use of timber will amount to actual possession in all cases where the land, or the greater part of it, is not fertile or level enough to be profitably cultivated in the present state of population? For this is what the defendant's testimony amounts to, although he uses the language used by the court in the case of *Ewing* v. *Burnett,* that the land is not susceptible of any useful permanent improvement. Yet from his description and the facts stated, we see simply that at present it would not be profitable to cultivate a large portion of this land, but how it may be when the country becomes more densely populated we cannot say. He concedes that part of it may be cultivated, and a small part in fact has since been inclosed. His testimony does not show absolutely that the land is not susceptible of cultivation or residence.

If this rule be established it would introduce in a great number of cases the question whether the land, or the greater part of it, be valuable enough to clear and cultivate; if not, then it would be claimed that the use of timber would be sufficient evidence of possession; but if suitable land to cultivate, then a different rule of possession would prevail. This would introduce a rule of uncertainty, and one that practicably it would be difficult to follow, whereas the other rule is generally understood, and of easy application, and we think it better to extend the exceptions to the rule requiring actual inclosure no farther. See 2 Smith, L. cases, 6 Am. Ed., Marg., p 561, *et seq.*

We conclude that the possession in this case was **not** of a character to give the defendant the better **title**, and the judgment will be affirmed.