COAL & IRON CO. v. COPPINGER.

(*Knoxville.* November 2, 1895.)

1. LIMITATIONS, STATUTE OF. *Seven-years' adverse possession.*

Seven years' possession of land, to be effective to bar a superior title, must be actual. adverse, continuous, exclusive, visible, and notorious. To be actual, it must be by inclosure if practicable, otherwise by such use as the premises are susceptible of. To be adverse, it must be hostile to all others. To be exclusive, it must exclude all hostile claims. To be continuous. it must be something more than a series of occasional trespasses attended with removals of coal, timber, and tanbark. To be visible and notorious, it must be such as gives to the true owner reasonable notice of its existence. (*Post, pp. 529, 530.*)

Cases cited and approved: West *v.* Lanier, 9 Hum., 762; Cass *v.* Richardson, 2 Cold., 28; Copeland *v.* Murphy, 2 Cold., 71; Pullen *v.* Hopkins, 1 Lea, 744; Hicks *v.* Tredericks, 9 Lea, 491: Garrett *v.* Land Co., 94 Tenn., 464; Kirkman *v.* Brown, 93 Tenn., 476.

2. SAME. *Case in judgment.*

Occasional entries upon land for a period of more than seven years by one claiming it under color of title, attended with the removals therefrom of timber and tanbark, and of coal in small quantities, does not constitute such possession as will bar the superior title, where the conflict was only 25 acres on the outside line of a 5,000 acre tract, and the true owner had no actual notice of the assertion of any adverse claim. (*Post, pp. 527–534.*)

---

FROM MARION.

---

Appeal from Chancery Court of Marion County. T. M. McCONNELL, Ch.

---

Coal & Iron Co. *v.* Coppinger.

---

W. D. SPEARS for Coal & Iron Co.

BYRON POPE for Coppinger.

WILKES, J.    This is an action of ejectment.    It involves the relative rights of the parties to a parcel of $25\frac{2}{10}$ acres of mountain land.    The Chancellor denied complainant any relief, and dismissed its bill, and it has appealed, and assigned errors.

It is conceded that the land in controversy is covered by the title papers of both parties, and that the chain of complainant's title is perfect and superior to that of defendant, who claims by virtue of more than seven years' adverse possession and user, coupled with his paper title.

There are no houses, fences, or other improvements upon the interlap, but defendant's contention is that it is not susceptible of such improvements or inclosure, and that he has had such possession as the property, from its situation and topography, is susceptible of.    Whether he has had such possession is the only question in controversy in this case, and turns upon his own evidence, which was adopted bodily by three other witnesses, and the testimony of William Francis, examined as a witness for defendant.    From this testimony it appears that the land lies in the mouth of Dixon's cove, on the side of a mountain, and extends up the bluff of the mountain.    The witness, Francis, states that no part of it is on top of the mountain, but that the corner is just under the bluff.

The defendant states, however, that four or five acres lie on top of the mountain, but he states that he does not know where the lines are. It is described as almost entirely a ledge of rock, most of it very steep and sliding. There is on it a coal bank opened, and from it the defendant has taken coal for many years, in quantities of a peck to a bushel and a half at a time, to run his little blacksmith shop with, and others have taken coal from the same place, mostly in small quantities, but some in wagon loads. Defendant says, in a general way, that this was done by his consent or permission, but he adds that "just anybody went there and got coal when they wanted it. Bishop, Rogers, and everybody else went and got coal whenever they wanted it. It was a free thing. I suffered them to go and get it. It was understood throughout the country that I owned the coal mine." There was some timber on the land, and defendant first began to use it in 1878, when he got some sawlogs, but how many is not stated. Since that date he has gotten 25,000 to 50,000 feet of timber off of the land, but cannot state the dates nor the quantities in any year, except that he got a board tree off of it in 1883, and some logs in 1892, when he was enjoined. Got tanbark also in 1883, and logs just as it suited him, but cannot say that they were gotten every year, and cannot state what years he did get timber or coal. He did not run his shop regularly, and never hauled any of the coal

away.    Henry got some coal by defendant's permission between 1880 and 1887; Jones some in 1888 or 1889; Rogers some in 1891; Owen some twenty years ago.    Brown lived on the place about ten years, and used the coal in his blacksmith shop, getting a little every year; that he, defendant, used the timber and coal off and on all the time since he claimed the land.

The complainant owned 5,000 acres of land in a body, and this $25\frac{2}{10}$ acres is an interlap on one of its outside lines.

It is not shown that defendant ever gave any actual notice to complainant of his adverse claim, or that it had any notice of such claim except that at some time, the date not stated, the lines of the 5,000 acre tract were surveyed and marked.

Defendant was present at the time, and assisted in running the line and marked it himself, including the lands in controversy in complainant's survey. He states that he objected to marking the line as it was run, but was told that the marking of the line did not amount to anything.

To constitute adverse possession there must be an actual inclosure, when such inclosure is practicable, of the premises.    While this is so, an actual inclosure or residence on land is not always absolutely necessary to constitute possession, if there is such use and occupation as the land, from its situation, nature, and character, is capable of.    *West* v. *Lanier,* 9 Hum., 762; *Cass* v. *Richardson,* 2 Cold., 28;

34—11 P

*Copeland* v. *Murphy*, 2 Cold., 71; *Pullen* v. *Hopkins*, 1 Lea, 744; *Hicks* v. *Tredericks*, 9 Lea, 491; *Garrett* v. *Belmont Land Co.*, 10 Pickle, 464.

Where, however, adverse possession is relied upon to defeat the superior title, the evidence must be strong, clear, and positive. Angell on Limitations, 381, 391; 1 Am. & Eng. Enc. Law, pp. 305–259, note.

The possession must be actual, visible, continuous, notorious, exclusive, and adverse. An occasional use by cutting grass or timber, or the erection of temporary structures, is not sufficient, and an occasional trespass by cutting trees, stripping bark, cutting grass from year to year on outlands, digging sand or ore, no matter how long continued, will not alone constitute adverse possession. 1 Am. & Eng. Enc. Law, p. 258; 2 Wood on Limitations (2d Ed.), 614–626; Angell on Limitations, 402. Nor will the mere payment of taxes suffice. *Pullen* v. *Hopkins*, 1 Lea, 741; 1 Am. & Eng. Enc. Law, 261, 284. And the owner must have knowledge of the adverse claim, or it must be so open and notorious as that he will be presumed to have notice of it. *Kirkman* v. *Brown*, 9 Pickle, 476; 1 Am. & Eng. Enc. Law, 264; Angell on Limitations, 406, 407.

Tested by these rules, it is clear that defendant has not had such adverse possession as the law requires to give him a good possessory right as against the holder of the true title.

We think that his acts in regard to this land

only constituted a series of trespasses upon the property in controversy without the actual knowledge of complainant, and the use of timber and ore as a trespasser. It was not exclusive, as he states himself that the ore bed was a free thing, and everybody used it that wanted to, and his cutting of timber and stripping of bark was only occasional, and not continuous, but such as any trespasser might do upon the border line of a large tract, without the knowledge of the true owner. We are of opinion, therefore, that defendant has not shown such adverse possession and user as will entitle him to defeat complainant's better title, and the decree of the Chancellor is reversed, and decree for complainant, to the land in dispute, will be entered in this Court, and writ of possession will issue.

The defendants will pay all costs of this Court and the Court below.