BENSDORFF *et al. v.* UIHLEIN *et al.*

(*Jackson.*   April Term, 1915.)

1. **ADVERSE POSSESSION.  Requisites.  Inclosure.**

The inclosure of property is not necessary to establish adverse possession, where such inclosure is impracticable, but possession of such property may be established by such use and occupation as its nature and character admits.   (*Post, p.* 197.)

Cases cited and approved:   Pullen v. Hopkins, 69 Tenn., 741; Hicks v. Tredericks, 77 Tenn., 491; Lieberman v. Clark, 114 Tenn., 134; Green v. Coal & Coke Co., 110 Tenn., 35; Sou. Iron, etc., Co. v. Schwoon, 124 Tenn., 176.

Cases cited and distinguished:   Garrett v. Belmont Land Co., 94 Tenn., 459; Pullen v. Hopkins, 69 Tenn., 741; Hicks v. Tredericks, 77 Tenn., 492; West v. Lanier, 28 Tenn., 762; Cass v. Richardson, 42 Tenn., 28; Coal Co. v. Coppinger, 95 Tenn., 526.

2. **ADVERSE POSSESSION.  Inclosure. Lot. "Susceptible." "Possible."**

A small triangular lot between two streets and a store, which is principally valuable as a means of access to the store, is not susceptible of inclosure so as to require it to be inclosed in order to support a claim of adverse possession thereto by the storekeeper, since to inclose it would destroy its chief value, and "susceptible," in that rule, is not synonymous with "possible."   (*Post, p.* 198.)

Case cited and distinguished:   Coal Co. v. Coppinger, 95 Tenn., 526.

3. **ADVERSE POSSESSION.  Character of possession.  Notoriety.**

Where the store owner paved the lot first with brick, and then with granolithic paving, and maintained such pavement during the statutory period, his possession thereof was open and notorious and gives him title.   (*Post, p.* 199.)

Case cited and approved:   Nichols v. Boston, 98 Mass., 39.
    132 Tenn.13

4. ADVERSE POSSESSION. Exclusive possession. Use by public.

The fact that the public, with the store owner's permission, used that pavement as a means of passing from one street to the other, does not prevent his possession from being exclusive, since such use was different in character from that to which he devoted the premises. (*Post, p.* 200.)

Cases cited and approved: Woodruff v. Langford, 115 N. W., 1020; Burrows v. Gallup, 32 Conn., 493; Dodge v. Lavin, 34 R. I., 514.

Cases cited and distinguished: Calloway v. Sanford, 35 S. W., 776; Boulo v. Railroad, 55 Ala., 480; Tracy v. Railroad, 39 Conn., 382.

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —Wm. F. Fitzhugh, Special Judge.

Thos. A. Evans, for appellants.

Lehman, Gates & Martin, for appellees.

Mr. Justice Green delivered the opinion of the Court.

This is an ejectment suit brought to recover a triangular lot west of the point of intersection of Marshall avenue and Monroe street, in the city of Memphis. The land in controversy is indicated by the letter "X" on the diagram, and is an apex of a triangle formed at this crossing. The base of the triangle is twenty-one and one-half feet. It runs along Marshall avenue thir-

ty-seven and one-half feet, and along Monroe street forty-seven and one-half feet.  The diagram follows:

The lot marked "Y" on the diagram is occupied by a building owned by the defendants herein.  This lot came into their possession some time prior to 1902.

Complainants assert what is probably a good paper title to the lot, marked "X" on the diagram, herein sued for.  Defendants rely on adverse possession, and interpose a plea of the statute of limitations.

The lot X was formerly a part of the right of way of a suburban railway.  The operation of this railroad was discontinued some years ago, and the tracks were taken up, and, so far as the railroad company is concerned, the particular lot of land in controversy has been abandoned for many years.

After the defendants had erected their building on lot Y, and the railroad company had taken up the tracks over lot X there remained an unoccupied space between

the line A B and the apex of the triangle at the inter-section of Marshall avenue and Monroe street. De-fendants' building had a front along the line A B, in which a door was placed. The lot immediately in front of this door, being unoccupied and rough by reason of the tearing up of the tracks, got into bad condition, was muddy, and pools of water stood in it. The city au-thorities, supposing that lot X was a part of the prop-erty of the defendants, ordered them to put it in bet-ter condition. They demurred at first, on the plea that the lot was not their property, but finally agreed to take charge of it, and in the year 1902 covered the whole of this lot with a brick pavement. It was the idea of defendants, according to the testimony of their agent, that the paving of the apex of this triangle in front of the east entrance to their storehouse would make their property more accessible and add to its value. The lot appeared to have been abandoned, and defendants thought that by taking possession of it they could finally acquire title thereto.

From 1902 until the filing of this bill on November 17, 1913, the defendants kept up this paving over the entire surface of the lot. They repaired the pavement from time to time, and finally took up the bricks and covered the lot with a granolithic pavement. Defend-ants all the while used this lot as an entrance to their storehouse, kept up the pavement, and otherwise as-serted ownership and dominion over the same.

Upon the facts stated, it is insisted by defendants that they have had seven years' open and adverse pos-

session of the triangle in suit, and that complainants' action is accordingly barred. We think this contention on the part of the defendants is well made.

Complainants rely on the fact that there was no inclosure of lot X, and the statement of this court in. *Garrett* v. *Belmont Land Company,* 94 Tenn., 459, 466, 29 S. W., 726, that:

"There must be actual inclosure, whenever the property is susceptible of such inclosure, in order to make out a case of adverse possession of town lots."

For support of this proposition the court cited *Pullen* v. *Hopkins,* 1 Lea., 741; *Hicks* v. *Tredericks,* 9 Lea, 492.

In the case of *Garrett* v. *Belmont Land Company,* supra, the court was dealing with vacant lots in the suburbs of Nashville. These lots were not suitable for business purposes, there were no buildings upon them, and, owing to their nature and location, there was no practical way in which adverse possession could have been indicated save by inclosure. The court only intended to say that inclosure of such lots as these was necessary to make out a case of adverse possession, and did not mean to say that there must be an inclosure of every city lot to establish adverse possession.

In the case of *West* v. *Lanier,* 9 Humph., 762, this court said, after reviewing the authorities:

"From these cases it will be seen that an inclosure or residence on land is unnecessary, in order to constitute possession, but that such use and occupation of it as from its nature and character it is susceptible,

under a claim of ownership, will be an actual possession." *West* v. *Lanier,* 9 Humph., 762.

In the case of *Cass* v. *Richardson,* 2 Cold., 28, it was held that the erection and use of a wash place to wash iron was not sufficient to constitute actual possession, the court saying that in general a building or inclosure of some sort was necessary, but that exceptions existed where the land was unfitted for residence or cultivation, as, for example, an ore bank, a coal ravine, a sand pit, stone quarry, or a meadow below tidewater.

In the case of *Coal Co.* v. *Coppinger,* 95 Tenn., 526, 32 S. W., 465, it was said that possession of land, to be actual, must be by inclosure, if practicable; otherwise by that use of which the premises were susceptible.

The authority of the cases referred to is recognized in many other decisions of this court, and the law is well settled that inclosure is unnecessary to establish actual possession where such inclosure is impracticable, but possession may be established by such use and occupation as the land, from its situation, nature, and character, admits. *Pullen* v. *Hopkins,* 1 Lea, 741; *Hicks* v. *Tredericks,* 9 Lea, 491; *Lieberman* v. *Clark,* 114 Tenn., 134, 85 S. W., 258, 69 L. R. A., 732; *Green* v. *Coal & Coke Company,* 110 Tenn., 35, 72 S. W., 459; *Sou. Iron, etc., Co.* v. *Schwoon,* 124 Tenn., 176, 135 S. W., 785.

It is urged on behalf of complainants that the lot "X" is capable of inclosure. This in a sense is true. As a matter of course, a fence could be built around this triangle. Such lots, however, are not ordinarily in-

closed, and, in fact, an inclosure would practically destroy the value of the lot for the very purpose for which it is best adapted.

We are not willing to give the construction to the word "susceptible," as used in our cases, which is insisted upon by the complainants. It is possible to inclose any property, but this court has never meant to say that "susceptibility" and "possibility" were convertible terms in defining adverse possession. It has never been intended to hold that inclosure was necessary, and that land was susceptible of inclosure if the inclosure would destroy the land for the purposes for which it was best suited. The meaning of our cases, as intimated in *Coal Co.* v. *Coppinger,* 95 Tenn., 526, 32 S. W., 465, is that there should be an inclosure when practicable—when the land is practically susceptible to inclosure.

The idea underlying the whole doctrine of adverse possession is that the possession should be maintained in an open and notorious manner, so as to warn the true owner that a hostile claim is being asserted to his land. We think the possession in this case was plain, open, and notorious, and amply sufficient to put the owner of this property on notice. The triangular space in litigation was entirely within the paving lines of the two intersecting streets. The space was twenty-one and one-half by thirty-seven and one-half by forty-seven and one-half feet. Covering so large a space as this with brick paving, and later with granolithic paving, was an unusual occurrence. Such a space as this in-

side of property lines would not ordinarily be paved, and the placing of the pavement thereupon unmistakably indicated that some one was claiming the land, improving it, and asserting dominion over it.

The case is similar to one where a wharf is built over lands covered by water. The building and use of a wharf in this way is held to be a disseisin of the land under the wharf. 2 C. J., 72; *Nickols* v. *Boston,* 98 Mass., 39, 93 Am. Dec., 132.

It is urged, however, by the complainants, that the defendants have never had any exclusive possession of this land, but that their occupation thereof was in common with the occupation of the public, and for that reason their possession was not such as to constitute the basis of a title by adverse possession. For this proposition we are referred to 1 Cyc., 1024; *Calloway* v. *Sanford* (Ch. App.), 35 S. W., 776; *Boulo* v. *Railroad,* 55 Ala., 480; *Tracy* v. *Railroad,* 39 Conn., 382.

These authorities and others collected in 2 C. J., 121, are to the effect that use and occupation of property in common with the public and with others will not constitute exclusive adverse possession.

We think the authorities, however, are not pertinent to this case. The use and occupation of this triangular corner made by the defendants and the use and occupation thereof enjoyed by the public were not common uses.

The triangle was used by the public merely as a passway. Persons turning around this corner of Monroe street and Marshall avenue crossed the lot.

Defendants, however, used the lot as an attractive, paved, and commodious entrance to their storehouse. No other person had a store fronting on this lot. No other person used the lot for the same purposes that defendants used it. No other person put the lot to the use to which it was best adapted.

The public and the defendants used the lot in an altogether different manner. There was nothing in common between the use of the defendants and the use of the public.

The use made of this lot by the public was under license, and a mere permissive use will not destroy the exclusiveness of an adverse claimant's possession. 2 C. J., 122; *Woodruff* v. *Langford* (Iowa), 115 N. W., 1020; *Burrows* v. *Gallup,* 32 Conn., 493, 87 Am. Dec., 186; *Dodge* v. *Lavin,* 34 R. I., 514, 84 Atl., 857.

It is quite a common thing to truncate the apices of business houses at the intersection of city streets. Such architecture makes an attractive entrance, directly on the corner, equally accessible to both streets, and increases the value of the property. A triangular space is always left between the pavements proper and the truncated portion of the building when this course is adopted. The triangular space is paved and the public passes over the exposed triangle in turning the corner. It would not do to hold that an owner who thus improves his property has his possession destroyed or impaired by the license or permission which he gives the public to turn street corners over his land. There is no sound basis upon which such an idea could rest.

In these cases the keeping and maintaining of a pavement over land so located is a sufficient indication of possession. The use of such land as a store entrance and the paving thereof is the ordinary use to which lands similarly located are put by other owners. Such use is the primary use. The owner invites the public to pass as close to the door of his business house as possible. The value of the house depends upon its accessibility to the public, but the passage of the public over such an exposed triangle is by the owner's permission, and does not affect his possession.

The chancellor's decree will be reversed, and the bill dismissed.