Joseph L. NORMAN and Alma W. Norman, Plaintiffs in Error,

v.

Arthur DeVallery SMEDLEY and Geraline Yvonne Smedley, Defendants in Error.

No. 39024.

Supreme Court of Oklahoma.

June 6, 1961.

Rehearing Denied Aug. 1, 1961.

Charles N. Berry, Jr., and Mont F. Highley, Jr., Oklahoma City, for plaintiffs in error.

Caldwell & Warren, Oklahoma City, for defendants in error.

PER CURIAM.

The plaintiffs in error, Joseph L. Norman and Alma W. Norman, will be referred to herein as "plaintiffs" and the defendants in error, Arthur DeVallery Smedley and Geraline Yvonne Smedley, will be referred to as "defendants".

In April, 1957, the guardian of Elizabeth Cox conveyed to plaintiffs the West 50 feet of Lot 1, Block 11, College Addition to Oklahoma City. The property is 108.6 feet deep. The street address of said property, which fronts on N.W. 13th Street, is 1708 N.W. 13th.

In 1950, James H. Ward and his wife conveyed all of Lots 9 and 10, Block 11, College Addition, except a triangular tract of land on the East side of Lot 9, which was 12.22 feet wide at the North end and 1.31 feet wide at the South end, to defendants. The referred-to tract was then owned by Oklahoma Railway Company, hereafter referred to as "ORC". The defendants' lots are 40 feet wide and 140 feet deep. The street address of the property, which

also fronts on NW 13th Street, is 1716 N. W. 13th.

As platted, an alley extended North and South along the West side of Lot 1 and the East side of a triangular-shaped tract which is above referred to.

The alley was 30 feet wide. By an ordinance enacted in 1920, Oklahoma City vacated the alley subject to an easement on the part of ORC to use the alley for railway purposes.

In 1941, ORC removed its tracks and abandoned use of the alley for railway purposes. Defendants contend that said action on ORC's part did not constitute an abandonment of the alley because they thereafter asserted title to same. If ORC didn't abandon the alley in 1941, then it abandoned same upon making the following referred-to conveyances in 1955. The precise date that ORC abandoned the alley is, under the facts of this case, without significance. If Ward's occupancy of the alley was not hostile and adverse as to Mrs. Cox it was not hostile and adverse as to ORC.

In 1955, ORC by warranty deed conveyed the above referred-to triangular-shaped tract to defendants and by quit-claim deed also conveyed all if its right, title and interest in the alley to defendants.

In 1958, defendants claimed to own all of the alley upon which Lot 1 and the triangular tract abutted. Their claim was and is based upon adverse possession under an adverse claim of right by them and the Wards for a continuous period beginning in either 1941 or 1942.

An assertion of said claim on the part of defendants caused plaintiffs to institute the instant action in 1958 for the purpose of ejecting defendants from the East half of the alley (a strip of land 15 feet wide and 108.6 feet long), which abutted on Lot 1, and to quiet plaintiffs' title to said strip. Plaintiffs based their title to the strip upon the proposition that upon the alley being vacated, the strip attached to and became a part of their property. As heretofore pointed out, defendants' claim to the strip was based upon adverse possession thereof under claim of right (not color of title) for a continuous period in excess of 15 years.

The case was tried to a jury. The jury's verdict was for defendants and judgment was entered in accordance with the verdict. From order denying plaintiffs' motion for new trial, they perfected this appeal.

Defendants do not dispute the proposition that upon the vacation of a street or alley the land to the center thereof attaches to and becomes a part of adjoining lots and blocks. See Askins v. British-American Oil Producing Co., 201 Okl. 209, 203 P.2d 877. Assuming that said vacation did not serve to extinguish ORC's easement to use the alley for railway purposes, the easement was either lost in 1941 upon O RC's electing to no longer use the alley for railway purposes or by ORC's conveying same to defendants in 1955. It follows that in 1941 or 1955, the East half of the alley adjoining Lot 1 became a part of the West 50 feet of said lot which was then owned by plaintiffs' grantor, Mrs. Cox, and under the facts of this case defendants only acquired title if their claim of adverse possession for the prescriptive period of 15 years was established. The evidence bearing upon said claim can be summarized thus:

James H. Ward testified that immediately upon ORC's removing its rails and ties at a point along the East side of the triangular tract, he "took one of (his) garden tools and went out to level the ground with the dirt or cinders that was between the ties"; that he began to mow the alleyway as did Mrs. Cox; that they used hand mowers; that after the lapse of about one year Mrs. Cox, who was then 85 years old, stated in substance that she was no longer physically able to mow the weeds and grass growing in the alley; that from that time (1942) until he sold Lots 9 and 10 in 1950 to defendants, he alone mowed the alley; that during the first year he did 90% of the mowing; that after Mrs. Cox made known that she would do no further mowing he claimed the alley; that he subsequently had approximately 10 dump truck loads of dirt hauled in; that

some of the dirt "might have been put on the roadbed"; that the dirt was hauled for the purpose of filling a ditch along the West side of the abandoned railway right-of-way. On the last referred-to matter he testified as follows:

"Q. As I understand it, there was a ditch on the west side of the old tracks, and on the East side. Where did you put that four loads of dirt? A. I put it on the west side of the tracks.

"Q. In other words, you put it on the 15 feet that we are not concerned with in this law suit? A. Right.

"Q. O.K. Then, you testified that subsequently you got six loads of dirt? A. Uh huh.

"Q. Now, did that go on the east side or the west side? A. No, it went on the west side.

"Q. It all went on the west side? A. Uh huh; that's right."

At the time Mr. Ward used the garden tool to level the abandoned trackway, he was not asserting an adverse claim to the alley. During said time Mrs. Cox was assisting in mowing the alley, and by said action was asserting possessory rights to the strip in controversy, which rights were not then questioned by Mr. Ward. It follows that Mr. Ward's claim to hostile adverse possession of the alley began in 1942 and is wholly dependent upon whether his actions in moving in dirt and mowing weeds and grass from 1942 to 1950 constituted such open, notorious and hostile possession as to apprise interested persons that he made adverse claim to the strip in controversy under a claim of right. It was stated in Nelson et al. v. Johnson et al., 189 Ky. 815, 226 S.W. 94, 97, that "A hostile or adverse possession of lands by a claimant is holding them with the intention of taking and holding them as his, to the exclusion of all others. This intention, of course, can be gathered only from acts and declarations of the claimant while in possession and the circumstances attending his entry and occupation. * * *" In 1 Am.Jur. "Adverse Possession", Sec. 130, p. 865, it is stated

that "He must intend to hold the land for himself, and that intention must be manifest by his acts." We are of the opinion that Mr. Ward's actions cannot be considered as hostile nor adverse.

As to Mr. Ward's acts in moving in dirt, he testified as heretofore pointed out that dirt was placed in the ditch along the west half of the alley and not on the portion of the alley in dispute. It follows that said acts did not tend to show that Mr. Ward laid adverse claim to the East half of the alley. In Bankers Trust Co. of Muskegon v. Robinson et al., 280 Mich. 458, 273 N.W. 768, 770, this was said:

"* * * Where one is in the actual possession of a portion of a tract of land without color of title, the possession is not extended by construction beyond the boundaries of the occupied portion. Campau v. Campau, 44 Mich. 31, 5 N.W. 1062; McVannel v. Pure Oil Co., 262 Mich. 518, 247 N.W. 735; 2 C.J. pp. 230, 231."

If Mr. Ward had testified that some of the dirt was used in leveling that portion of the roadbed which was on the strip in controversy, his acts in said particular would tend to show that he made adverse claim to the strip. He did not, however, so testify. He testified that some of the dirt "might" have been placed on the roadbed and not that it was placed thereon. He failed to testify whether any part of the roadbed upon which he might have placed dirt was on the strip in controversy or the point on the roadbed upon which he placed the dirt. The plat which was introduced in evidence tends to show that all of the roadbed was on the West half of the alley. If we assume that a portion of the roadbed was on the East half of the alley, his testimony fails to show that he placed dirt on that portion of the roadbed that was on the tract in controversy. As heretofore pointed out, Lot 9 was 140 feet deep (as was the triangular tract) and Lot 1 was 108.6 feet deep. Mr. Ward claimed the entire alley-way adjoining the triangular tract and therefore claimed a portion of the alley 31.6 feet deep and 30 feet wide that did not

adjoin Lot 1. Did Mr. Ward place the dirt on that portion of the roadbed in the alley last referred to? Did he place the dirt on the roadbed before or after Mrs. Cox stopped mowing? The record does not disclose the answers to the posed questions.

It is settled law in this jurisdiction that one claiming title by adverse possession has the burden of proving all facts necessary to establish such title and that to establish same the proof must be clear and positive and all inferences and presumptions are in favor of the rightful owner. See Pavlovitch v. Wommack, 206 Okl. 158, 241 P.2d 1119, and cases cited following ▪ 112, Vol. 2, Adverse Possession, West's Okla. Dig.

We are of the conviction that Mr. Ward's testimony to the effect that he "might" have placed some of the dirt on the roadbed is, in view of the issues presented, without probative effect. We are, therefore, of the opinion that the only evidence which tends to sustain defendant's contention that his possession of the strip in controversy was hostile and adverse, is evidence showing that from 1942 to 1950 Mr. Ward mowed the alleyway under claim of right thereto. In our opinion, his actions in said respect were wholly insufficient to establish said claim. In Huling v. Seccombe et al., 88 Cal.App. 238, 263 P. 362, the court held' that the occasional cutting of grass on an unoccupied, unenclosed, uncultivated lot was insufficient to base a claim of adverse possession thereto.

The Supreme Court of Michigan had this to say in Bankers Trust Co. of Muskegon v. Robinson et al., supra:

"* * * The occasional or periodical entry upon the lands to cut wild grass does not constitute such actual possession as is necessary to constitute an element of title by adverse possession. Doctor v. Turner, 251 Mich. 175, 231 N.W. 115; 2 C.J. p. 67. Such acts amount to no more than occasional trespasses or acts of ownership and do not constitute continuous possession. 2 C.J. p. 82; Doctor v. Turner, 251 Mich. 175, 231 N.W. 115. * * *"

This was said in Cusick et al. v. Cutshaw et al., 34 Tenn.App. 283, 237 S.W.2d 563, 567:

"* * * Occasional use of land through cultivation, cutting grass or timber or the grazing of stock is not sufficient to establish adverse possession. Coal & Iron Co. v. Coppinger, supra [95 Tenn. 526, 32 S.W. 465]; Hicks v. Tredericks, 77 Tenn. 491; Pullen v. Hopkins, Clark & Co., 69 Tenn. 741. In the case at bar the elements essential to establish title in appellants to land not embraced in their deeds, other than the small portion referred to, are considered lacking. * * *"

As we understand defendants' argument, the fact that ORC paid special tax assessments and also paid ad valorem taxes in connection with either the triangular tract that it owned, or the alley, or on both property rights, tends to strengthen their claim of adverse possession to the alley. The fact that ORC may have paid ad valorem taxes does not serve to show that Mr. Ward's possession of the alley was hostile and adverse. Mr. Ward and not ORC was the one who asserted adverse possession and Mr. Ward paid no ad valorem or taxes on said tract or alley. Mr. Ward's failure to pay ad valorem taxes tends to show that his possession of the alley was not hostile. At p. 832, § 221, 2 C.J.S., this is said:

"Evidence that the adverse claimant did not pay the taxes on the land in dispute or that some other person paid them is admissible as tending to show that the possession was not hostile. * * *"

We add, that as to the alley, ORC's ad valorem taxes were no doubt measured by the value of its easement and the physical property that it had placed thereon and for said reason ORC cannot be said to have paid ad valorem taxes on the alley as the owner of same.

After defendants acquired Lots 9 and 10 in 1950, they had dirt hauled in and spread in the alley, leveled the ground, established a lawn, and a fence which they caused to be built enclosed the area. Their acts clearly show that their possession of the alley was hostile and adverse under a claim of right. However, said claim had only been asserted for some 8 years at the time the instant action was filed in 1958. It is patent that in order to show adverse possession of the strip in controversy for the prescriptive 15-year period, defendants must tack to their period the period (1942–1950) that Mr. Ward allegedly held adversely. In order to tack Ward's holding to theirs, Ward's holding must have been hostile and adverse, and since such is not the case, his holding cannot be considered. In 2 C.J.S. Adverse Possession § 132, p. 697, this is said:

"As a general proposition an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself where predecessor did not or could not claim the land adversely because claimant must take his predecessor's possession with all of the infirmities attaching to it. * * *"

In Anderson v. Francis et al., 177 Okl. 47, 57 P.2d 619, 620, this was said in the first paragraph of the syllabus:

"1. Title by Prescription—Requisites. Title to land cannot be acquired by adverse possession unless the possession is open, notorious, hostile, and exclusive, and it is also essential that such possession, in order that it may ripen into title, should be shown to be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual, because as soon as, and as often as, a break occurs the law restores the constructive possession of the owner."

See also Pavlovitch v. Wommack, supra.

In view of the fact that there was no competent evidence that the Wards and defendants had open, notorious, hostile and exclusive possession of the tract in controversy for an uninterrupted and continuous period of 15 years, the trial court erred in denying plaintiffs' motion for a directed verdict.

Plaintiffs asserted the right to the reasonable rental value of the strip in controversy and defendants asserted the right to recover the value of improvements placed thereon. In view of the fact that the verdict and judgment thereon was in defendants' favor, the referred-to issues were neither considered nor disposed of.

The judgment of the trial court is reversed with directions to enter judgment for plaintiffs, quieting their title to one-half the alley adjoining Lot 1 and ejecting defendants therefrom, which judgment shall be without prejudice to the rights of the parties to trial on the undetermined issues referred to in the foregoing paragraph.

WILLIAMS, C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, V. C. J., and WELCH and HALLEY, JJ., dissent.

HALLEY, Justice (dissenting).

I dissent in this case because there was sufficient evidence produced to make a jury question in an action of ejectment and it would have been error for the trial court to direct a verdict for the plaintiffs. Since the question presented here is one of legal cognizance rather than equitable, we are not permitted to undertake an examination of the record with a view to passing on the weight, value and credibility of the testimony. The inquiry must be confined to ascertaining whether competent evidence adduced, together with all permissible legal inferences to be drawn therefrom, when viewed in the light most favorable to the defendants, is insufficient as a matter of law to support their claim of adverse possession to the East half of the disputed alley.

Defendants' evidence is uncontradicted. There is no proof to refute the fact that defendants and their predecessors in title remained in undisturbed possession of the land for over 15 years. Plaintiffs contend that the testimony is insufficient to show that Ward (defendants' predecessor) was occupying the land under a "claim of right" in an open, public and visible manner.

The acts of dominion necessary to establish a prescriptive title depend in their nature upon the character of the premises and the physical facts. There is no precise legal yardstick to be uniformly applied in every case. In Herron v. Swarts, Okl., 350 P.2d 314, this Court, quoting from 2 C.J.S. Adverse Possession § 43, p. 557, said:

"* * * Acts of ownership of such character as openly and publicly to indicate an assumed control or use which is consistent with the character of the premises in question; such acts as would ordinarily be performed by the true owner in appropriating the land and its avails to his own use; the exercise of such acts of ownership and occupancy by claimant as are sufficient to 'hoist his flag' and keep it flying over the land; physical facts which openly evince and give notice of an intent to hold the land in hostile dominion, or external and public signs or indications of the possession and intention to possess. * * *"

It was said in McGrath v. Eichhoff, 187 Okl. 64, 100 P.2d 880, 886, in discussing adverse possession, that:

"The law does not attempt to list all the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such determination in a given case must largely depend upon 'the situation of the parties, the size and extent of the land, and the purpose for which it is adapted.'"

See also: Farris v. Smallwood, 204 Okl. 123, 227 P.2d 644; Kimble v. Allen, Okl., 298 P.2d 1042; Cox v. Sarkeys, Okl., 304 P.2d 979; Herron v. Swarts, supra.

It is clear that from the above cases, an adverse occupant under a "claim of right" need not do more than is "consistent with the character of the premises and its avails." He is not required to make any particular improvements. The strip in controversy is urban in character and lies in a residential section. Its use as a lawn would be consistent with the surrounding physical facts and this is precisely what Ward did with it. Even if it be assumed that "a claim of right" may not be predicated on mere mowing of grass, although such be done, without interference and for the requisite number of years, upon unimproved (vacant) narrow strip of urban land situated between two residential homes, it must still be decided that Ward did less than was consistent with the acts of a true owner in appropriating the land to its ordinary use. This cannot be said unless it is held that Ward was under a duty to make upon the strip in controversy the same improvements as he placed upon the West side of the alley. The law does not admit of such a standard. It must be kept in mind that the West side of the alley was closer to Ward's home. He may have wanted to fill the ditch on that part before proceeding to make identical improvement on the other side. On the other hand, Ward may have intended to merely level the east side of the alley without placing any additional dirt thereon. Although most, if not all the dirt which had been hauled in from elsewhere was used to fill the West ditch, it is equally correct that Ward did some leveling work on the East side of the alley at its street end. When defendants bought their property from Ward, the East ditch was deeper at its South end and there was "not much" difference in level between the East and West ditch at its street end. In any event, to say that Ward's failure to fill in the East ditch in a manner identical to that on the West side is fatal to his "claim of right,"

is to adopt "comparative standard" based on the acts of an adverse occupant upon property wholly unrelated to the present controversy. It is not for this Court to determine whether under these circumstances Ward failed to "evince intent" of his claim to the East half of the alley. This was a question of fact for the jury and it was answered in favor of the defendants.