Joe HAIR, Plaintiff in Error,

v.

The CITY OF NORMAN, Oklahoma, a Municipal Corporation, et al., Defendants in Error.

No. 40224.

Supreme Court of Oklahoma.

Dec. 17, 1963.

Rehearing Denied Feb. 25, 1964.

Marvin T. Johnson, Tulsa, and T. R. Benedum, Norman, for plaintiff in error.

John M. Luttrell and Hugh P. Mabe, Norman, for defendants in error.

PER CURIAM.

Plaintiff brought this action against the defendant city, its city manager and individual members of its governing body, said individual members being nominal parties only, for injunctive relief to bar defendants from entering upon a tract of land claimed by him and from removing fences placed thereon by plaintiff. The city, its members and the city manager will hereafter be designated as defendant.

The defendant answered denying generally the allegations set forth in the petition of the plaintiff, and in its cross-petition set up its ownership of the land in question, claimed adverse possession thereof for more than fifteen years, and prayed for its title to be quieted in the defendant, and for plaintiff to be enjoined from asserting any further claim to the property.

Plaintiff in his reply and answer to said cross-petition claimed that he owned the property in question since 1922, and that any possession of said land or use thereof by the defendant was permissive and prayed that his title be quieted as against the defendant. The land will hereafter be referred to as Tract A.

Upon the issues thus joined, trial was had to the trial court which rendered judgment for defendant on its cross-petition, quieting the title in the defendant.

The evidence of the plaintiff shows that he bought Tract A August 10, 1922 from George R. McDaniel and Charline McDaniel, his wife, by warranty deed and had it recorded April 10, 1923. There was an error in the description of the land contained in this deed in that it recited that the land was in the northeast quarter of Section 31, instead of in the northeast quarter of the Northwest Quarter of Section 31, so that the deed did not cover the land in question. About the time this controversy arose, plaintiff obtained quitclaim deeds in 1960 from the widow and daughter, the only heirs of George R. McDaniel, deceased, which deeds correctly described Tract A, the land in controversy in this action. Tract A remained vacant until 1960, when plaintiff put a fence around it, which was torn down by a representative of the defendant.

It was stipulated at the trial that Tract A was not on the ad valorem tax rolls from 1922 to 1960. In 1960 plaintiff had it placed on the tax rolls for the years 1945 to 1959 and paid the taxes.

About the time plaintiff acquired this property, a large paving district was completed on West Main Street, which adjoined this land on the north, and paving taxes assessed over a period of ten years, payable in installments for the years 1922 to 1931, against Tract A.

The record made and kept by the city clerk, introduced in evidence as an exhibit, shows that the 1922 installment was paid on April 2, 1923, but the exhibit does not show the date of payment of any later installment. In the column at the far left, opposite Tract A, appears the name of J. W. Bradbury, crossed out, and under it the name Joe Hair. In the "When Paid" column for the 1929 assessment there appears the notation "City," and in the "When Paid" columns for 1930 and 1931 there appears the word "City."

The records of the County Treasurer show that the 1925 installment of the paving tax on Tract A was unpaid and certified to that office for collection, sold to the county, endorsed to W. B. Longan, and then the 1926 and 1927 installments were also paid by him and endorsed on the certificate. Said records also reveal cancellation and surrender of the certificate on September 21, 1932, indicating payment of the delinquent installments on that date. This is the same date that the deed from McMakin to the city covering Tract B went on record.

The reasonable inference from the tax assessment roll is that installments of pav-

ing taxes after 1927 were charged to the city, or believed to be owed by the city.

On February 22, 1932, claim was made to the city commission for payment of delinquent tax certificates on the McMakin park tract on West Main Street in the amount of $441.61 and was referred to the city manager.

Subsequently, on March 8, 1932, the same claim was presented and approved, subject to "proper conveyance of said tract to the City of Norman."

Plaintiff Joe Hair was City Clerk of the City of Norman in 1922, at the time he acquired ownership of Tract A. He remained city clerk continuously up until 1928 or 1929, and became city clerk again in 1931, serving until 1934 or 1935.

At a meeting of the city commission on January 8, 1929, it was voted to accept deeds from Joe Hair and Leo McMakin for property on West Main Street to be used for park purposes. The official minutes reflect this action. The McMakin deed, covering Tract B, dated May 24, 1928, thereafter appears of record on September 21, 1932, the same day that the delinquent paving taxes against Tract A were paid and the delinquent tax certificate surrendered and cancelled, as shown by the county treasurer's records. Tract B above referred to adjoins Tract A on the east side and is 155 feet long and 140 feet wide and is used by the defendant for park purposes. Throughout the 1920's and early 1930's both Tracts A and B were very low-lying, unusable wasteland and of little value. A drainage creek traversed the property from north to south, and in time of flood the land was likely to, and did, overflow. Later on, during W.P.A. days, defendant caused a better drainage channel to be constructed and did some filling in on Tracts A and B.

The record reflects Tract A was taken off the ad valorem tax rolls in 1922. Although it was the duty of plaintiff to have it assessed for taxation in his name for 1922, he failed to do so. He paid no taxes on Tract A from the time he bought it in 1922 until 1960, when he had it assessed for taxes for 1945 to 1959. Therefore, he paid no taxes from 1922 to 1945. It appears the tax officials thought that Tract A had become property of the city and was no longer taxable.

On appeal the plaintiff contends there is no sufficient evidence to establish adverse possession of the land in question by defendant that is actual and open, notorious, exclusive and continuous for the full statutory period. In support of this contention he cites *Flesher v. Callahan*, 32 Okl. 283, 122 P. 489, wherein we held:

"The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner."

"[p]ossession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants."

Tract A was not on the tax rolls for a period of thirty-eight years and was not used by plaintiff during this period, but used by defendant in connection with Tract B to which it had title for park purposes. The actions of the city in filling in the land, mowing it and maintaining it as a park are consistent with those of an owner. The records found in the office of the city clerk and in the office of the county treasurer are sufficient to indicate that the possession of the defendant was under claim of right, and that such possession is adequate to create in the defendant a title by prescription.

In Powell on Real Property, Vol. 6, Sec. 1018, it is stated:

"Under the rules stated in the preceding paragraphs, possession, in order to be adverse, has to be open, notorious, visible, continuous, and under a claim of right, but some relaxations in these

requirements are made when there is color of title. No additional general rules are set forth in this paragraph. Its chief function is to collect, at one point, some of the varieties of evidence found effective in decided cases to establish satisfaction of these requirements.

"Stripped of legal verbiage, the ultimate fact to be proved is that the claimant has acted towards the land in question as would an average owner, taking properly into account the geophysical nature of this land. If the trier of the fact is convinced that the conduct of the claimant fits this broadly stated criterion, inferences of satisfaction of the more specific requirements are likely * * *"

In Fessler v. Thompson, 191 Okl. 450, 130 P.2d 513, we held:

"It is not necessary, in order to establish and maintain possession of real estate, that the claimant should actually reside upon it or have it enclosed with a fence. It is sufficient if the party is doing such acts thereon that indicate in an open, public and visible manner that he has exclusive control over the land, under a claim of right to such exclusive possession."

In the case of Herron v. Swarts, Okl., 350 P.2d 314, the court quotes with approval from 2 C.J.S. Adverse Possession § 43, p. 557, as follows:

" * * * acts of ownership of such character as openly and publicly to indicate an assumed control or use which is *consistent with the character of the premises* in question; such acts as would ordinarily be performed by the true owner in appropriating the land and its avails to his own use; the exercise of such acts of ownership and occupancy by claimant as are sufficient to 'hoist his flag' and keep it flying over the land; physical facts which openly evince and give notice of an intent·to hold the land in hostile dominion, or

external and public signs or indications of the possession and intention to possess. * * *" ·(Emphasis ours.)

We quote the following from the Kansas case of Manville v. Gronniger, 182 Kan. 572, 322 P.2d 789:

"We feel that we are not called upon to engage in a lengthy discussion of the well-established principles relating to the law of adverse possession. They have been stated over and over again. In a sense, it may be said that acts, in order to constitute adverse possession, *are 'relative' to the type and nature of the property and surrounding circumstances*; that the acts of dominion must be adapted *to the particular land*, its condition, locality and *appropriate use*; that neither actual cultivation nor residence is necessary to constitute actual possession where the property is so situated and is of such a type as not to admit of any permanent useful improvements, and that possession must be definite *as the character of the land will permit*. On the general subject matter see Gildehaus v. Whiting, 39 Kan. 706, 712, 716, 18 P. 916; Tucker v. Hankey, 173 Kan. 593, 250 P.2d 784; Ames v. Brooks, 179 Kan. 590, 593, 297 P.2d 195; 1 Am.Jur., Adverse Possession, Sec. 132, et seq., p. 867." (Emphasis ours.)

The property in question was appropriately used by the City of Norman for more than the statutory period. It was annexed to a city park and tended and used in the same manner as the balance of the park. That it was under claim of right is manifest from the removal from the tax rolls and the notations upon the city minutes.

From the facts and circumstances in this case, we hold the trial court did not err in rendering judgment for the·defendant.

Affirmed.

The Court acknowledges the aid of Supernumerary Judge CORN in the preparation of this opinion. After a tentative opin-

ion was written, the cause was assigned to a Justice of this Court. Thereafter upon report and consideration in conference, the foregoing opinion was adopted by the Court.